**UNITED STATES, Appellee,**

v.

**Private (E–2) Robert M. DILLARD, SSN 533–66–2621, United States Army, Appellant.**

**CM 436859.**

U. S. Army Court of Military Review.

22 Dec. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain William L. Finch, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, and Captain Landon P. Snell, III, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

On 31 October 1977, the appellant was convicted of aggravated assault in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. Ninety-nine days

later (February 7, 1978), the convening authority approved the sentence.[1] The appellant was in confinement for that entire period from conviction to the action except for two days when he escaped from custody. He was tried by special court-martial for the escape and sentenced to confinement which he served from 5 December 1977 to 31 January 1978.

■ The appellant assigns as error the failure of the convening authority to take his action within 90 days as prescribed in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1970). We agree that the convening authority did not take his action within that time frame, but we do not think *Dunlap* applicable for several reasons.

First, the period of post-trial delay for which the Government was accountable did not in fact exceed 90 days because the confinement was interrupted for service of a sentence imposed by another court-martial for another offense, thereby reducing the period chargeable to this offense below 90 days.[2]

The United States Court of Military Appeals in *Dunlap* established a rule concerning post-trial delay from sentence to convening authority action similar to the pretrial delay rule established in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). The *Burton* rules on speedy trial have been incorporated into the *Dunlap* speedy review rules. *Dunlap v. Convening Authority, supra.*

■ One of the speedy trial rules concerns the accountability for *Burton* purposes for periods of confinement prior to trial served as a result of the imposition of punishment for another offense. Such periods are not counted in computing the 90 days for *Burton* purposes even though they

extend the period of confinement beyond 90 days. *United States v. Miller,* 2 M.J. 77 (C.M.A.1976), (three days imposed pursuant to Article 15, UCMJ, upon a person embarked upon a vessel); *United States v. Gettz,* 49 C.M.R. 79 (N.C.M.R.1974), (14 days as part of sentence by general court-martial). Somewhat analogous is the exclusion of civilian confinement which interrupts the service of pretrial confinement. *United States v. Reed,* 2 M.J. 64 (C.M.A.1976). As pretrial confinement pursuant to other charges or post-trial confinement as a result of other convictions is not confinement related to the subject offense, it is excluded when computing the *Burton* or *Dunlap* period for that offense.[3] Thus the period from 5 December 1977 to 31 January 1978, the time when appellant's confinement was the result of a special court-martial conviction for escape from custody, is excludable. This reduces the period below the 90-day "trigger" of *Dunlap.*

■ The second reason *Dunlap* does not apply also results from an excludable period—the time it took the Postal Service to transmit the staff judge advocate's review to trial defense counsel in the United States and the return time (up until the date the convening authority took his action) of the reply to the command in Korea. This total of 15 days when deducted from the 99-day overall period also reduces the accountable time below 90 days. *United States v. Bryant,* 3 M.J. 396 (C.M.A.1977).

The third reason *Dunlap* does not apply is difficult to categorize. Confronted with the departure of the trial defense counsel for the United States on what would probably be termed a routine reassignment, the staff judge advocate directed that a copy of the record of trial be furnished that counsel prior to his departure. The record was not

---

1. Bad-conduct discharge, confinement at hard labor for one year, forfeiture of $150.00 pay per month for twelve months, and reduction to Private E–1.

2. Service of the sentence on the assault offense involved in this case was interrupted for service of the later sentence for the escape offense. Paragraphs 97e and 126j, Manual for

Courts-Martial, United States, 1969 (Revised edition).

3. This conclusion in favor of excludability of periods of unrelated confinement is even more comfortably drawn in post-trial situations than in pretrial contexts wherein a presumption of innocence exists.

authenticated at that time, but it is contemplated that the defense counsel will examine the record prior to authentication. Paragraph 82e, Manual for Courts-Martial, United States, 1969 (Revised edition). The staff judge advocate anticipated that the trial defense counsel would take the record with him for examination and use in his review pursuant to *United States v. Goode,* 1 M.J. 3 (C.M.A.1975).

The trial defense counsel refused to accept the record and did not take it with him because it was too bulky to handle.[4] His reaction is understandable as it would be very difficult if not impossible for him to give the necessary attention to his representation of appellant under the circumstances of his departure from Korea and the resettlement of his family at his new duty station in the United States. Nevertheless, the position of the staff judge advocate must also be recognized. He was plagued with a chronic court reporter shortage; the defense counsel was departing upon reassignment to a duty station on the other side of the world; and looming in the background was the approaching 90-day deadline of *Dunlap.*

When the defense counsel thwarted the staff judge advocate's effort to serve him with a copy of the record, he left the staff judge advocate with few options. The staff judge advocate could have attempted to have the defense counsel retained in Korea until the *Goode* procedures were completed (the action now espoused by appellate defense counsel); he could have forwarded the review and the record to the defense counsel in the United States; or he could have tried to work out a satisfactory procedure with the defense counsel. From our reading of the affidavits of the parties concerned, the attitudes of the individuals regretfully appear to foreclose any possibility of the latter solution. Retention in the command would have been a harsh choice in that it would have unreasonably disrupted not only the personal plans of the defense counsel but also the official management of personnel and transportation resources.

The staff judge advocate chose the only viable alternative under the circumstances—on the 74th day after trial he mailed a copy of his review to the defense counsel in the United States for comment. He should have but did not send along a copy of the record of trial. The defense counsel waited ten days after receiving the review before responding and then offered no comment or rebuttal but requested a copy of the record of trial. At no time did defense counsel request additional time in which to reply.

■ The staff judge advocate waited more than three weeks for a response from defense counsel. Apprehensive over the *Dunlap* rule and relying on the provision in *Goode* regarding defense counsel's failure to respond, he proceeded with the convening authority's action without a response from counsel. We find that decision to be the proper one.

■ The defense counsel refused to examine the record of trial prior to leaving Korea, delayed ten days in responding to the staff judge advocate's letter forwarding a copy of the post-trial review, and then only requested a copy of the record. The totality of his actions amounted to a waiver of the right to submit comment or rebuttal.[5] The staff judge advocate's lapse in not forwarding a copy of the record along with the review is not of sufficient magnitude to change this result. Whether we speak in terms of defense delay, waiver, or extraordinary circumstances, it would be unconscionable to charge the Government with a violation of the *Dunlap* rule under

---

4. The defense counsel's assertion in his affidavit filed with this Court that there was a "scheme to deny [his] client the substance of his rights regarding post-trial processing of his case, while perhaps preserving the appearance thereof . . ." is unsupported by the evidence and unwarranted.

5. We do not intend to imply that defense counsel has any duty or responsibility to assist the Government in meeting its obligation under *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1970). This does not mean, however, that defense counsel can by his affirmative actions impede the Government's processes.

these conditions where the Government was making a good faith effort to protect the appellant's rights.

Notwithstanding our conclusion that *Dunlap* does not apply here, we have examined the record to determine if the appellant has been prejudiced under the circumstances of this case, and we find no error prejudicial to the rights of appellant.[6]

The findings of guilty and the sentence are affirmed.

Judge DeFORD and Judge LEWIS concur.

---

6. This case does not involve the termination of the attorney-client relationship during the post-trial phase condemned in *United States v. Iverson*, 5 M.J. 440 (C.M.A.1978), as trial defense counsel at all times maintained the relationship even though he (counsel), the appellant, and the convening authority were at different locations.