**UNITED STATES, Appellee,**

v.

**Staff Sergeant Michael G. KERSHAW, 027–34–3910, United States Army, Appellant.**

**ACMR 8601500.**

U.S. Army Court of Military Review.

31 May 1988.

For Appellant: Captain William E. Slade, JAGC (argued); Lieutenant Colonel Joel D. Miller, JAGC, Major Stewart C. Hudson, JAGC (on brief).

For Appellee: Captain Thomas L. Herrington, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before DeFORD, KANE, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Tried by a military judge sitting as general court-martial at Seoul, Korea, appellant was convicted, contrary to his pleas, of violating a general regulation and obtaining services by false pretenses in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1982). His sentence to a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E-1 was approved by the convening authority.

On appeal, as he did at trial, appellant asserts that the charges must be dismissed on the basis that he was granted immunity from prosecution. We agree that the charges must be dismissed but hold that the basis for such action is a violation of due process of law.

In the fall of 1985, concern was expressed by the Korean government that the United States Army Post Office system in Korea [hereinafter APO] was being improperly used by certain Korean citizens to smuggle money out of the country in violation of Korean currency laws. In an effort to address the host country's concerns, the United States Ambassador to Korea conferred with his customs attache, Mr. W, an

officer of the United States Customs Service, and directed an investigation of the matter. Mr. W met with the commanders of the United States Eighth Army and the Combined Field Army as well as Colonel M, the Staff Judge Advocate and Colonel R, the provost marshal, and others of the Eighth Army. Colonel M assigned Captain C, a senior prosecutor assigned to the United States Army Legal Services Agency, Korea,[1] to assist Mr. W in his investigation.

Mr. W arranged through the bank manager of the American Express Bank in Yongsan to receive an illicit list[2] of Army personnel who had purchased large sum cashier's checks and money orders at the bank. He also received a list of large sum money order purchasers at the APO and compared the two lists. The appellant's name was included within these lists.

Mr. W then arranged to have the soldiers who were named on the lists appear before him for interrogation in a room allocated for his use at the Criminal Investigation Command (CID) headquarters. Appellant was the third soldier questioned. Present for appellant's questioning on 12 May 1986 was Mr. W, Mr. B, an agent from the United States Internal Revenue Service (I.R.S.), Mr. Han, a high-ranking Korean Prosecutor, and Captain C, the previously noted army prosecutor.

At the inception of the interrogation of the appellant, Mr. W introduced each of the men who were in attendance. He explained to the appellant, a senior noncommissioned officer assigned to the 142d Military Police Company, that they were investigating illegal funds leaving Korea through the APO and that they were looking into the scheme of how these events occurred. The appellant was not warned of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

---

1. The United States Army Legal Services Agency, Korea, is a subordinate element of the Combined Field Army, the commander of which is one of the operating General Court-Martial convening authorities who exercises general courts-martial jurisdiction over an area of Korea to include Seoul, the Korean Capital region where this incident occurred.

2. The Branch Manager gave Mr. W the list of personnel in violation of the bank's regulations. Mr. W subsequently requested and received a search warrant for bank records containing this same information. This action was taken to "legalize" what had been previously illegally obtained information.

(1966), nor was he warned of rights under Article 31, UCMJ, Section 831, U.S.C.A. *United States v. Tempia,* 37 C.M.R. 249 (C.M.A. 1967).

The appellant was immediately apprehensive and requested legal counsel. He told Mr. W that he would not talk with him without counsel. Mr. W told the appellant that "we", the group in the room, were not investigating him; rather, Mr. W indicated that they only wanted to know the source of the enormous amounts of money leaving Korea. He further told the appellant that he was not a target of investigation for prosecution because he was only a part of a scheme, that it was the group's intent to get the real perpetrators and that the appellant would not be charged.[3] He further stated, "If I'm not interested in you for prosecution, no one here is." Mr. B from the Internal Revenue Service told the appellant at the same moment, "You're off the hook." Following Mr. W's assurances and some further badgering and threats from Mr. B of the I.R.S., the appellant cooperated and told the group how the money (a sum in excess of $200,000.00) came to him in bundles of $20.00 United States notes, the methods he used to exchange these funds for certified checks and APO money orders and the source of these funds. This information resulted in the virtual immediate prosecution and jailing of a Mr. Pong, a Korean citizen, by Korean authorities. All members of the group, including Captain C, questioned appellant during the interrogation which lasted over three hours. Mr. W talked with the appellant on several occasions following the initial interview at which times he clarified portions of his original disclosures. In addition, appellant had assisted the investigation at Prosecutor Han's insistence by going back to Mr. Pong to secure more funds.

Mr. Pong, however, was reluctant to continue exchanging funds for checks and money orders following his arrest.

At no time during the initial interrogation did Captain C advise appellant of his rights or otherwise indicate to the appellant that the Army's position with regard to the investigation was other than as Mr. W had indicated to the appellant. Captain C left the interrogation believing that the appellant had been given immunity from prosecution. He had no further participation in the prosecution of the appellant although he briefed his own superior, Major N, the deputy staff judge advocate, and, in all probability, the staff judge advocate, with regard to the interrogation and the promises that were made.

Subsequently, the Commander, 142d Military Police Company initiated administrative elimination action against the appellant under Army Regulation 635–200, Personnel Separations: Enlisted Personnel (5 July 1984), on 28 July 1986. Notice of this action was duly served upon the appellant. This action was subsequently dropped, however, when Colonel Y, the Commander, 8th Military Police Brigade, personally charged the appellant on 21 November 1986 with the offenses for which he was ultimately convicted.

At trial, trial defense counsel filed many pretrial motions, three of which are significant to our disposition of this case. The first motion requested dismissal of all charges on grounds of immunity. The second requested dismissal on grounds of a violation of due process of law. The third requested suppression of all pretrial statements and derivative evidence as obtained in a violation of appellant's rights under *Miranda v. Arizona, supra,* and *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).[4]

---

3. Mr. W testified that his intent was that appellant would not be charged in a Federal prosecution before any Federal civilian court. He later testified that when he used the term "we", he meant the three principal persons not including the Army prosecutor who Mr. W considered his assistant. However, he did not explain that view to the appellant. From the appellant's viewpoint, the only conclusion he could have perceived was that the group, to include the

Army, was offering him immunity from prosecution in return for his cooperation.

4. For reasons that are unexplained, trial defense counsel saw fit to withdraw this motion at the time the trial judge desired to take up the matter. Although we view his conduct of the defense in this case as generally commendable, his withdrawal of this critical motion raises the spectre of incompetency of counsel under the

With regard to the first two motions, the trial judge ruled that neither the convening authority nor the staff judge advocate granted immunity from prosecution or had notice that Mr. W had granted immunity to the appellant.[5] He also ruled that Captain C, although a prosecutor, could not and did not grant immunity. He further stated that the appellant could not perceive that Mr. W or anyone else present had the authority to grant immunity from military prosecution and that the promises made to appellant by the United States Customs Service, Internal Revenue Service, and Korean authorities had been kept. He concluded that the appellant had not been denied due process of law and denied the motions. (R 235–236). Upon inquiry by trial defense counsel, the military judge acknowledged that there was no evidence that the military was excluded from the grant of immunity given by Mr. W.

## I

■ Immunity under military law has generally been limited to formal grants of testimonial or transactional immunity by a general court-martial convening authority. *See* Manual for Court-Martial, United States 1984, Rule for Courts-Martial 704. *See, e.g., United States v. Villines,* 13 M.J. 46 (C.M.A. 1982); *United States v. Kirsch,* 35 C.M.R. 56 (C.M.A. 1964). The Court of Military Appeals has, however, determined that a convening authority's staff judge advocate has implicit authority to grant immunity by virtue of the special relationship which exists between these officers. *See United States v. Brown,* 13 M.J. 253 (C.M.A. 1982), *and Cooke v. Orser,* 12 M.J. 335 (C.M.A. 1982). That court has also indicated that implied authority to grant immunity may be found from facts and circumstances sufficient to support an in-

ference that the person granting immunity is acting with the full knowledge and authorization of a convening authority. *See United States v. Churnovic,* 22 M.J. 401 (C.M.A. 1986). In order to find an implied grant of immunity under the facts of this case, as egregious as they may be, we would be required to construct that grant of immunity from whole cloth, a task we decline to do.

## II

As noted, the appellant, clearly a suspect, was interrogated in a custodial environment by Federal agents and officers in violation of his rights against self-incrimination. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *and United States v. Tempia, supra. See also United States v. Duga,* 10 M.J. 206 (C.M.A. 1981). That interrogation resulted in substantial admissions of criminal culpability by the appellant and the disclosure of identities of other persons who were principals and their participation.

■ Military law requires as a matter of military due process and fundamental fairness that appropriate warnings be given by the questioning officer when incriminating statements are deliberately sought from a witness-suspect who is not represented by counsel. *United States v. Milburn,* 8 M.J. 110, 114 (C.M.A. 1979). Appellant here was entitled to suppression of all statements and any derivative evidence obtained as a result of this illegal custodial interrogation. *Dunaway v. New York, supra; Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Pyatt,* 46 C.M.R. 84 (C.M.A. 1972). However, the Manual for Courts-Martial, United States 1984, Military Rule of Evidence 304(b) [6] requires an accused to

standards of *Strickland v. Washington* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *U.S. v. Jefferson,* 13 M.J. 1 (C.M.A. 1982). However, we do not reach that issue in view of our holding here.

5. This portion of the trial judge's ruling is clearly not supported by the evidence.

6. Rule 304 provides:

(a) *General Rule.* Except as provided in subsection (b), an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress or an objection to the evidence under this rule.
(b) *Exceptions.*
(1) Where the statement is involuntary only in terms of noncompliance with the require-

make a timely motion to suppress or an objection to the evidence. Here, appellant's counsel withdrew his motion to suppress prior to receipt of that evidence before the court.[7] Failure to object will usually result in a waiver. *United States v. Yarborough*, 18 M.J. 452 (C.M.A. 1984). Although the prosecution did not offer into evidence the appellant's pretrial written statement, we have little doubt that a great portion of the evidence relied upon by the government and admitted at trial had its genesis with the interrogation of the appellant by Mr. W and his cohorts. Nevertheless, trial defense counsel failed to object to the admissibility of such derivative evidence and the trial judge did not require the prosecution to show that the evidence admitted was not derived from the illegal statement or that the evidence would have been independently obtained even had the statement not been made. *See* Mil. R. Evid. 304(b)(3).

■ It has long been established that a criminal trial is not a game of chance; the trial judge is more than a mere referee and as such he is required to assure that the accused receives a fair trial. *United States v. Graves*, 1 M.J. 50 (C.M.A. 1975). Furthermore, the trial judge is required to assure that the finder of fact considers only those matters which are properly before the court in determining guilt or innocence. *United States v. Sneed*, 2 M.J. 795 (A.C.M.R. 1976). What is "properly before the court" includes evidence which is admitted in accordance with the Manual for Courts-Martial to include the Military Rules of Evidence. These rules equally apply where the military judge is also the finder of fact.

In view of the quantum of the evidence and its unique character before the court on motion prior to presentation of the prosecution's case in chief, we believe the military judge should have assured himself that the evidence he was hearing was not otherwise tainted by the illegal interrogation of the appellant. The evidence presented during the hearing on the motions demonstrated that the evidence may well have been the involuntary product of a violation of the fifth amendment and of unlawful inducement. *See* Mil.R.Evid. 304(c)(3). The violation of well-known Federal and military warning requirements were patent notwithstanding trial defense counsel's failure to pursue his suppression motion. Due process and the factual circumstances of this case required the military judge to assure that the evidence was properly admissible. *Cf. United States v. Milburn*, 8 M.J. at 114.

### III

■ Although we decline to find a grant of immunity in this case, we are disappointed that Captain C, while assisting Mr. W, did not see fit to speak up and advise the appellant that his role in the

---

ments concerning counsel under Mil. R. Evid. 305(d), 305(e), and 305(g), this rule does not prohibit use of the statement to impeach by contradiction the in-court testimony of the accused or the use of such statement in a later prosecution against the accused for perjury, false swearing, or the making of a false official statement.

(2) Evidence that was obtained as a result of an involuntary statement may be used when the evidence would have been obtained even if the involuntary statement had not been made.

(3) *Derivative evidence.* Evidence that is challenged under this rule as a derivative evidence may be admitted against the accused if the military judge finds by a preponderance of the evidence that the statement was made voluntarily, or that the evidence would have been obtained even if the statement had not been made.

(c) *Definitions.* As used in these rules:

(1) *Confession.* A "confession" is an acknowledgment of guilt.

(2) *Admission.* An "admission" is a self-incriminating statement falling short of an acknowledgment of guilt, even if it was intended by its maker to be exculpatory.

(3) *Involuntary.* A statement is "involuntary" if it is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement.

7. See note 4. The trial judge was concerned with the fact that trial defense counsel desired to withdraw the motion to suppress and questioned him concerning his authority to withdraw the motion.

interrogation was limited to assisting Mr. W. By remaining silent he encouraged the only possible perception—that, in return for appellant's cooperation and information concerning the money changing scheme, the United States, including the Army, had no intention to prosecute appellant in any court.

We find little difference in negotiating for evidence and in negotiating a pretrial agreement. "A prosecutor should avoid implying a greater power to influence the disposition of a case than he possesses." *Cooke v. Orser*, 12 M.J. at 341 (C.M.A. 1982) (quoting Section 4.3(b) of ABA Standards, The Prosecution Function (1971)). Here, as in *Cooke*, the appellant acted to his detriment in reliance upon the representations made to him. *Id.* 342.

Finally, the evidence of record discloses that Mr. W coordinated his investigation at its inception at the highest level of the Army's command in Korea. Captain C duly reported the promises made by Mr. W and the information received to his immediate superior as well as Major N, the deputy staff judge advocate, and in all probability to Lieutenant Colonel H, the staff judge advocate of Combined Field Army. Army prosecutorial authorities may not stand back and deny knowledge, responsibility, and participation in Mr. W's investigation and then profit from the results simply because a formal written grant of immunity was not initiated and signed. Although the record is not entirely clear, it is inconceivable under the circumstances of this case that the convening authority and his staff judge advocate were not fully briefed with regard to Mr. W's full activities and the results his investigation achieved. This is especially true when one considers that this investigation was initially directed by the senior United States officer assigned to the Republic of Korea, to wit: the United States Ambassador.

The totality of the circumstances of this case demonstrate that the appellant was denied a fair trial and require that we set aside his conviction. We view the total prosecutorial effort here to be so egregious as to offend due process of law. *Cf. Cooke v. Orser*, 12 M.J. at 345–346.

Accordingly, the findings of guilty and the sentence are set aside. The charges are dismissed.

Judge KANE and Judge SMITH concur.