UNITED STATES, Appellee,

v.

Private First Class Gregory D. HONI-
CAN, 400–86–2466, United States
Army, Appellant.

ACMR 8701445.

U.S. Army Court of Military Review.

25 Oct. 1988.

For Appellant: Captain Alfred H. No-votne, JAGC (argued); Lieutenant Colonel Joel D. Miller, JAGC, Captain Donald G. Curry, Jr., JAGC (on brief).

For Appellee: Captain Thomas L. Her-rington, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before FELDER, GILLEY and GIUNTINI, Appellate Military Judges.

1. One month earlier, on 2 June 1987, appellant was convicted at a special court-martial of two specifications of absence without leave (AWOL). (He had been charged with two desertions.) He was sentenced to a bad-conduct discharge, confinement for 105 days (with eighty-two days credit for pretrial confinement), forfeiture of $426.00 pay per month for three months, and reduction to the grade of Private E-1. The sentence has been affirmed. *United States v. Honican*, ACMR 8701238 (18 Nov. 1987), *petition denied*, 26 M.J. 163 (C.M.A.1988).

## OPINION OF THE COURT

GILLEY, Judge:

A military judge sitting as a general court-martial found appellant, pursuant to his pleas, guilty of five specifications of forgery in violation of Article 123, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 923 (1982).[1] The military judge sentenced him to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E-1. Pursuant to a pretrial agreement the convening authority approved the sentence, but suspended for 180 days those parts of the confinement and the forfeitures that exceeded two years.

The appellant contended at trial and asserts now that he was denied a speedy trial under Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter M.C.M., 1984 and R.C.M., respectively] 707(d)[2] because he was in pretrial confinement for the forgeries more than 90 days. We find that the appellant was denied a speedy trial. The government's unjustified delay caused accountable pretrial confinement to exceed ninety days and caused the appellant to suffer needlessly two convictions instead of one.

### A. Onset of Government Accountability

When a speedy trial issue involves multiple specifications, the proceedings as to each specification or set of them must be considered separately. *See United States v. Talavera*, 8 M.J. 14, 17 (C.M.A. 1979). Accountability for delay regarding additional charges will relate back to the earliest of these dates: (1) when the accused was notified of preferral of those charges, (2) when confinement was based

2. R.C.M. 707(d) provides in part: When the accused is in pretrial arrest or confinement under R.C.M. 304 or 305, immediate steps shall be taken to bring the accused to trial. No accused shall be held in pretrial arrest or confinement in excess of 90 days for the same or related charges.

R.C.M. 707(e) provides: (e). *Remedy.* Failure to comply with this rule shall result in dismissal of the affected charges upon timely motion by the accused.

on misconduct resulting in that set of charges, or, (3) for an accused already in confinement, when the government possessed "substantial information" on which to base preferral of charges. *See United States v. Boden,* 21 M.J. 916, 917–918 (A.C. M.R.1986); R.C.M. 707(b)(4).

■ The military judge found that the government's accountability for processing these charges began on 12 March 1987. On that date, the appellant turned himself in to civilian authorities in Kentucky. They notified military authorities who took custody of him that day. Previously, the appellant was absent without authority from 22 November 1986 to 4 January 1987. On 12 January 1987, his former roommate made a sworn statement indicating that he recognized the appellant's handwriting on his checks, which had been stolen from a closet in the room where the appellant was staying. On 4 February, the appellant made a sworn statement denying guilt, and he submitted handwriting and fingerprint exemplars to Air Force personnel, who were investigating this case for the Army. (Two of the five checks were made to the order of and presented for payment at Peterson Air Force Base Exchange, Colorado.) On 5 February, the appellant again departed without authority, remaining so absent until 12 March.

We accept the military judge's finding that government accountability began on 12 March 1987, because in reality the appellant was placed in pretrial confinement for this set of offenses as well as for the two desertions. Well before 12 March 1987 the government knew that: (1) the appellant had previously had eighteen checks returned from military and civilian payees for insufficient funds; (2) the appellant's roommate, who had no disciplinary record, had closed the account two years earlier; (3) this roommate asserted that the appellant wrote the checks in question and had direct access to the checks; and, (4) the appellant was AWOL when the checks were presented and was AWOL again the day after the

police questioned him and took handwriting exemplars and fingerprints. While hasty preparation and prosecution of additional charges is not required, certainly accountability for these additional charges began when the government had this much substantial information on which to base charges. *See United States v. Johnson,* 48 C.M.R. 599, 601 (C.M.A.1974).

### B. Nondeductibility of Confinement After First Court–Martial

On 18 March, the appellant was returned to Fort Carson, Colorado. On 19 March, the Air Force investigators learned that a Colorado Bureau of Investigation handwriting examiner had determined that the appellant had authored the questioned signature on the checks.[3] On 20 March, the appellant's company commander preferred two charges of desertion against him. On 15 May, the Colorado laboratory also reported that appellant's fingerprints were on the checks. On 27 May, seventy-seven days after confinement began for all the offenses, the Air Force completed its report of the investigation and the government preferred a charge consisting of five specifications of forgery. On 28 May, the two specifications of desertion were referred to trial, and on 2 June, the appellant was tried on them (Honican I). On 12 June, the government released appellant from confinement, five days after they should have released him under administrative rules for "good time" accrued after the conviction in Honican I. On 23 June, the forgery charge was referred to trial, and on 1 July, the appellant was tried again (Honican II).

■ The military judge further found the government accountable for the eighty-two days of confinement before Honican I, but found that the remaining ten days of confinement was deductible post-trial confinement. We hold that the military judge erred in finding the ten days after Honican I deductible for Honican II. Ordinarily, periods of confinement served as punishment prior to trial for another offense do

---

**3.** The record does not specify that this information was relayed promptly by the Air Force investigators to the appellant's commander, but the record makes clear that the appellant's command used the Air Force to investigate this case and was in contact with the Air Force about it.

not count against the government for computing days of accountability for speedy trial purposes. *See United States v. Dillard,* 6 M.J. 796, 798 (A.C.M.R.1978) (deducting from post-trial accountability service of sentence to confinement for an escape made after the conviction in question). That rule does not apply to this scenario because the government's unreasonable pretrial delay in preferring this charge split the sets of charges needlessly, thereby causing without justification two trials, and hence the "post-trial" confinement at issue. The UCMJ, R.C.M., and prior cases support our conclusion.

Article 10, UCMJ, requires "immediate steps" to try an·accused held in confinement[4] and Article 33, UCMJ, adds that charges shall be forwarded to the convening authority within eight days or a report provided to explain why it is not practicable to do so.[5] In *United States v. Burton,* 44 C.M.R. 166, 172 (C.M.A.1971), the Court of Military Appeals held that Article 10 is presumptively violated by failure to bring a service member to trial within three months[6] of pretrial arrest or confinement. Emphasis on Article 10's mandate, as construed by *Burton,* is also reflected in the R.C.M. 707(d) requirement to try or release from confinement a service member by the ninetieth day of pretrial confinement.

This case illustrates the practical wisdom of the rule that the accused has the right to a speedy trial on each set of charges: he has two convictions instead of one as a result of what occurred. *See United*

*States v. Talavera,* 8 M.J. at 17; *United States v. Boden,* 21 M.J. at 917 (government accountability runs separately for each set of charges for accused in pretrial confinement). *Cf. United States v. Carlisle,* 25 M.J. 426, 427 (C.M.A.1988) (absent lawful reasons for delay, R.C.M. 707 must be followed strictly).

Moreover, these two convictions resulted because the government violated Article 33: it was not "impracticable" for the government to have preferred, investigated under Article 32, and forwarded these charges much sooner than the ninety days so expended after 19 March 1987 (the date the government should have prepared charges).[7] In essence, the government waited for a largely superfluous fingerprint report before *preferring* this set of charges, effectively foreclosing any possibility of trying the two sets of charges together. *See* R.C.M. 601(e)(2) discussion. ("Ordinarily all known charges should be referred to a single court-martial"). Without the government's unjustified delay and apparent disregard for statutorily-prescribed procedure, only one trial, one conviction, and one sentence would have occurred.[8] Likewise, since the Article 33 violation resulted in the ten-day delay in question, it is not "good cause" for an exclusion under R.C.M. 707(d). *See United States v. Durr,* 21 M.J. 576, 578 (A.C.M.R.1985) ("good cause" exclusion under R.C.M. 707(c)(8), applied by R.C.M. 707(d), applicable only if event justifies a delay, referring to viability of the policy that ordinarily all

---

4. Article 10 pertinently provides:
   When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

5. Article 33 provides:
   When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay.

6. The three months was changed to 90 days. *United States v. Driver,* 49 C.M.R. 376, 379 (C.M.A.1974).

7. In fact, only twenty-one days elapsed from the preferral to the forwarding of the charges and completion of investigation pursuant to Article 32, UCMJ.

8. The government's waiting eighty-three days to try the two desertion specifications combined with delay of sixty-nine days in preferring the charges of five forgeries preclude it from asserting successfully that two convictions is the price of giving the appellant a speedy trial. We note that the government urged at Honican I and II that it delayed Honican I so the charges could be tried together.

known charges should be tried together). Accordingly, this "post-trial" confinement was not deductible from government accountability.

### C. Denial of Speedy Trial Under Article 10

■ We find on these facts two violations of Article 10's mandate for speedy trial. First, the length of pretrial confinement violated the applicable standards. In *United States v. Burton,* 44 C.M.R. at 172, the court held that when an accused is in confinement more than three months awaiting trial, the government has a heavy burden to show its diligence to bring those charges to trial. *Burton* has remained in effect after the promulgation of R.C.M. 707, also providing a ninety-day rule. *See United States v. Harvey,* 23 M.J. 280 (C.M.A.1986) (memorandum opinion and order). In *Burton,* the court noted that for this purpose, unlike Article III courts, it would not consider prejudice to the accused and whether he waived his rights. *United States v. Burton,* 44 C.M.R. at 171–72. Here, even though the government had overwhelming evidence of guilt on 19 March, it waited—unreasonably—until it received a report of fingerprint analysis on 27 May to prefer and process charges.

While purposeful or oppressive delay by the government suffices for an Article 10 violation, failure by the government, as here, to proceed with reasonable diligence in bringing the charges to trial also causes a violation of Article 10. *See United States v. Parish,* 38 C.M.R. 209, 214 (C.M. A.1968); R.C.M. 707(e) (dismissal of charges prescribed as remedy for failure to bring a confined accused to trial in ninety days).

■ Second, when we weigh in the Article 33 violation,[9] Article 10's mandate for an "immediate" trial was not met. We find specific prejudice to this appellant because he has two federal convictions solely because of the government's negligence.[10] This result was in no way caused by recidivism or defense delay. Accordingly, the appellant should not suffer the indelible stigma commonly encountered under federal and state law for repeat offenders. *See United States v. Smart,* 21 M.J. 15, 19 n. 3 (C.M.A.1985) (quoting *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985)) (findings of guilty seen as inflicting punishment by causing or enabling social stigma and impeachment of credibility, and delaying eligibility for parole, irrespective of sentence adjudged).[11]

---

9. Dismissal does not follow automatically from an Article 33 violation; specific prejudice is required. *United States v. Rogers,* 7 M.J. 274, 275 n. 2 (C.M.A.1979) (no prejudice shown to have resulted from Article 33 violation; delay was explained). Yet, violations of Article 33 are considered in determining whether Article 10's mandate of immediate trial for confined service members has been met. *See United States v. Nelson,* 5 M.J. 189, 190 n. 1 (C.M.A.1978); *United States v. Mason,* 45 C.M.R. 163, 167 (C.M.A. 1972); *United States v. Fernandez,* 48 C.M.R. 460, 462 (N.C.M.R.1974) (Article 33 violation standing alone does not warrant dismissal, but weighs against the government in showing due diligence required by the speedy trial mandate of Article 10). *Cf. United States v. Taylor,* — U.S. —, —, 108 S.Ct. 2413, 2416, 101 L.Ed.2d 297 (1988) (prejudice is a factor in determining remedy for failure to meet requirements of Speedy Trial Act of 1974).

10. We recognize of course that rarely is it practicable to forward charges to the general court-martial convening authority within eight days. But that reality does not justify waiting sixty-nine days needlessly to begin a process that took

only twenty-one days, and thereby caused a second court-martial.

11. We note too that appellant's conviction by special rather than by general court-martial for two absences without leave has marginal significance for this issue. *Cf. United States v. Carlisle,* 25 M.J. at 427 (speedy trial considerations do not afford loopholes for the government). Further, under the new federal sentencing guidelines, both general and special courts-martial count as prior convictions in determining who is a repeat offender. United States Sentencing Commission Guidelines Manual, Chap. 4, Part A, § 4A1.2(g) (October 1987). Moreover, states commonly have repeat-offender statutes for those who have shown that they will not conform to the norms of society founded in its criminal law. *See Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); A. Campbell, *Law of Sentencing,* § 40 Repeat Offender (1980) (Supp.1987); Lance, "A Criminal Punitive Discharge—An Effective Punishment," 79 Mil.L.Rev. 1, 32 (1978) (the court-martial conviction itself and the type of crime are more important to potential employers than character of discharge).

The accused did not demand a speedy trial until after the ninety-five days of confinement had run. Did he thereby waive his right to a speedy trial under Article 10? *Burton* established a separate requirement if accused demands a speedy trial. *United States v. Burton,* 44 C.M.R. at 172. *See* R.C.M. 707(d) discussion. Under *Burton,* if on or before the ninetieth day, an accused demands the speedy disposition of charges he thereby preserves the issue, and the Government must respond to the request by proceeding immediately or showing adequate cause for further delay. *United States v. Burton,* 44 C.M.R. at 172. Failure to demand a speedy disposition of charges on or before the ninetieth day does not, however, result in waiver. *See United States v. Johnson,* 1 M.J. 101, 106 (C.M.A. 1975). By contrast, when pretrial confinement exceeds ninety days under *Burton,* an Article 10 violation is presumed; thus, waiver does not apply here.[12]

In summary, our standards of fairness codified in the UCMJ and implemented by the R.C.M. require that only one of these convictions stand. *Cf. Cooke v. Orser,* 12 M.J. 335, 345–346 (C.M.A.1982); *United States v. Kershaw,* 26 M.J. 723, 728 (A.C. M.R.1988).

The findings of guilty and the sentence are set aside. The Charge and its Specifications are dismissed.

Senior Judge FELDER and Judge GIUNTINI concur.

---

12. This decision is not affected by *United States v. McCallister,* 27 M.J. 138 (C.M.A.1988). Moreover, the result of our analysis would not be different had we specifically applied the formula of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) in testing for violations of the sixth amendment right to a speedy trial. The appellant did not specifically assert at trial or this court that the sixth amendment had been violated. We have observed that appellant's notice of the motion did state that the motion would pertain to the sixth amendment as well as *Burton* and R.C.M. 707, and that the military judge found that the sixth amendment was not violated.