### UNITED STATES

v.

**Mark R. GARNER, 579–88–4081 Radioman Third Class (E–4), U.S. Navy.**

**NMCM 91 02440.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 11 March 1991.

Decided 15 Dec. 1993.

---

LT D.P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT Timothy S. Susanin, JAGC, USN, Appellate Government Counsel.

Before EDWIN W. WELCH, J., JAMES E. ORR, Senior Judge and P.J. McLAUGHLIN, J.

ORR, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer members of conspiring to distribute cocaine, possessing cocaine with the intent to distribute, and distributing cocaine in violation, respectively, of Articles 80 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880,[1] 912a. He was sentenced to reduction to pay grade E–1, forfeiture of all pay and allowances, confinement for 5 years, and a dishonorable discharge. The convening authority approved the findings and sentence as adjudged and forwarded the record of trial for our review under Article 66, UCMJ, 10 U.S.C. § 866. Before us, the appellant has raised four assignments of error.[2]

1. The conspiracy specification under the Additional Charge was listed as a violation of Article 80, UCMJ, vice the correct Article 81, 10 U.S.C. § 881.

2. I. THE MILITARY JUDGE ERRED IN HIS CALCULATION OF PRETRIAL CONFINEMENT BECAUSE APPELLANT'S FIRST PRETRIAL CONFINEMENT WAS ORDERED PURSUANT TO HIS CIVILIAN OFFENSE AND NOT AS A

Due to the recent decision by the U.S. Court of Military Appeals in *United States v. Kossman*, 38 M.J. 258 (C.M.A.1993), this case presents a rather unusual perspective on the right to a speedy trial in the armed services. In his first and second assignments of error, the appellant contends that the military judge erred in denying his motion to dismiss all charges on the grounds that he was denied a speedy trial under the 6th amendment of the U.S. Constitution; Article 10 of the UCMJ, 10 U.S.C. § 810 (hereinafter "Article 10"); Rule for Courts–Martial (R.C.M.) 707; and *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971). Because *Kossman* overruled *Burton*, however, we need not consider the Court's *Burton* precedent even though the appellant's case "arose" under it. *Kossman*, 38 M.J. at 261. Our analysis, therefore, will address the appellant's assignments of error under the 6th Amendment, Article 10, and R.C.M. 707. The version of R.C.M. 707 applicable to this case, however, predates Change 5 to the 1984 Manual for Courts–Martial and includes its own prohibition that "[n]o accused shall be held in pretrial arrest or confinement in excess of 90 days for the same or related charges." R.C.M. 707(d).[3]

### I. Factual Background

On 3 October 1990, charges of an unauthorized absence and a single use of cocaine were preferred against the appellant and referred to a special court-martial. At that time, the appellant was not placed in any pretrial restraint, but 19 days later, on 22 October 1990, he was arrested by the Metropolitan Police in the District of Columbia and charged with distributing cocaine to an undercover policeman. Following his appearance before a commissioner in the Superior Court of the District of Columbia the following day, the appellant was released on his personal recognizance with charges still pending in the Criminal Division of that Court[4] and returned to his command.

Upon his return, the appellant was ordered into pretrial confinement. According to the "72–hour letter" issued by his commanding officer on 25 October 1990, the appellant was confined in connection with the 3 October charges which had been referred to the special court-martial. Appellate Exhibit IV. In that letter, the appellant's commanding officer noted that the appellant had tested positive for cocaine use in five subsequent urine tests since the initial urinalysis results that had lead to the Article 112a charge on 3 October.[5] *Id.* After also noting the appellant's arrest 3 days earlier by civilian police for selling cocaine, the commanding officer stated:

> In light of the above, I have determined that ... [the appellant] is a flight risk and that pretrial confinement is necessary. Because it is foreseeable that the prisoner [the appellant] will not appear at his court-martial, less severe forms of restraint appear inadequate. Due to the repetitive nature and severity of his offense, he is also likely to continue to engage in serious misconduct, or be subject to harm from

CONSEQUENCE OF THE SPECIAL COURT–MARTIAL CHARGES.

II. APPELLANT WAS DENIED A SPEEDY TRIAL UNDER THE UCMJ AND CONSTITUTIONAL STANDARD BECAUSE THE GOVERNMENT FAILED TO EXERCISE DUE DILIGENCE IN BRINGING APPELLANT TO TRIAL.

III. THE MILITARY JUDGE ERRED BY GIVING A SENTENCE WHICH INCLUDED ALMOST FOUR TIMES AS MUCH CONFINEMENT AS THAT SUGGESTED BY THE FEDERAL SENTENCING GUIDELINES.

IV. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THE ARTICLE 80 [SIC] CONSPIRACY CHARGE AGAINST APPELLANT. (FOOTNOTE OMITTED.)

3. The Rules for Courts–Martial were last changed in 1991 by Change 5 to the Manual for

Courts–Martial, United States, 1984. The amendments to R.C.M. 707 that were made by that change apply only to cases in which arraignment occurred on or after 6 July 1991. Exec.Order No. 12,767, § 4.*d*, 3 C.F.R. 334, 341 (1991). Consequently, the version of R.C.M. 707 applicable to this case is that which was in effect prior to Change 5. All subsequent references to R.C.M. 707 in this opinion, therefore, will be to that earlier version unless otherwise stated.

4. Case No. F11731–90.

5. In the factual summary provided in the appellant's Motion to Dismiss at trial, the appellant states that he tested positive for cocaine an additional nine times after initially testing positive in a random test administered on 30 May 1990. Appellate Exhibit I.

those he associated with in these alleged activities. In addition, because of his possible drug use, it is in the best interests of ... [the appellant]'s health that he be confined to separate him from potential drug sources and supplies.

*Id.*

The appellant was subsequently tried by special court-martial on 4–5 December 1990 and found guilty of the charges preferred on 3 October (i.e., use of cocaine and unauthorized absence). During the sentencing phase of that trial, the military judge instructed the court members that they should consider the fact that the accused had been in pretrial confinement since 23 October 1990. The sentence ultimately adjudged was a bad-conduct discharge and reduction to pay grade E–1.[6] It did not include either forfeitures or confinement.

Immediately after that trial, the appellant was notified that charges were being preferred against him by his command for possession and distribution of cocaine based upon the same criminal activity that had resulted in the case pending in the D.C. Superior Court. The appellant was ordered back into pretrial confinement on 5 December 1990, charges were preferred on 6 December 1990, and a pretrial confinement hearing pursuant to R.C.M. 305(i) was held on 11 December 1990.

On 18 December 1990, the U.S. Attorney indicated his willingness to "transfer the case" to the Navy for trial. On 11 January 1991, the charge pending in the Superior Court of the District of Columbia was "nolle prossed," and on 23 January 1991 the U.S. Attorney's case file was turned over to the Navy trial counsel. Five days later, on 28 January 1991, an Article 32 Investigation was begun, but due to a defense request for a witness who was then unavailable, the hearing was continued until 4 February 1991. The investigation was concluded on that day, and the report was completed on 12 February 1991.

On 20 February 1991 an additional charge of conspiracy was preferred against the appellant, and on 21 February 1991, all charges were referred to a general court-martial. The appellant was released from pretrial confinement on 4 March 1991, and trial commenced on 7 March 1991.

II. Speedy Trial—R.C.M. 707

■ Prior to arraignment, the appellant filed a motion to dismiss all charges claiming that he had been in pretrial confinement in connection with the charges then before the court for 130 days—the period from 23 October 1990 to 4 March 1991. The military judge denied the motion based upon his determination that the appellant's pretrial confinement from 23 October to 5 December 1990 was not for the charges then before the court. Record at 35. Accordingly, he also found that the period of Government accountability for the current charges commenced on 5 December 1990 and that the appellant's pretrial confinement in connection with the charges before the court had been less than 90 days. *Id.* The military judge concluded that the Government had met its burden of proof under R.C.M. 707 and that the accused had not been denied a speedy trial.

In this appeal, the appellant argues that the military judge erred in calculating the commencement and duration of his pretrial confinement, that the Government failed to meet its burden of proof under R.C.M. 707, and that the charges should have been dismissed for lack of a speedy trial. We disagree and conclude that the military judge's ruling was correct in law and fact. *United States v. Givens,* 30 M.J. 294, 299 (C.M.A. 1990).

■ When a speedy trial issue involves multiple charges, the proceedings as to each charge and specification, or set of them, must be considered separately. *United States v. Talavera,* 8 M.J. 14, 17 (C.M.A.1979). Where an accused is already in pretrial confinement when a second set of offenses is discovered and both sets are referred to a single trial, the Court of Military Appeals has stated that "a period of investigation is normally not part of the period for which the Government is accountable in determining the timeliness of prosecution, unless the sus-

6. *United States v. Garner,* No. 91 2065

(N.M.C.M.R. 30 Dec. 1992).

pect or accused is confined or restrained *in connection with those charges.*" *United States v. Mladjen,* 19 U.S.C.M.A. 159, 161, 41 C.M.R. 159, 161, 1969 WL 6317 (1969) (citation omitted) (emphasis added); *United States v. Robinson,* 26 M.J. 954 (A.C.M.R. 1988), *aff'd,* 28 M.J. 481 (C.M.A.1989). In the vast majority of cases that have applied these principles, however, the accused was ultimately tried for both or all sets of offenses at a single court-martial. This is not entirely unexpected in light of the preference under military law to try all known offenses at a single trial. *See* Discussion, R.C.M. 601(e)(2); M.C.M., 1969 (Rev.), ¶ 33*h.* Even more extraordinary is the situation where an accused in pretrial confinement goes to one trial for some offenses and is then subsequently tried for the misbehavior that precipitated the incarceration.

In *United States v. Nash,* 5 M.J. 37 (C.M.A.1978) (per curiam), the accused was released from pretrial confinement that had been imposed as the result of an initial set of charges, but he was subsequently involved in other misconduct and reconfined. Although none of the later misconduct was prosecuted in the following trial, the Court of Military Appeals applied the rule that "for the purpose of speedy disposition, each charge must be considered separately ..." and upheld the determination that the *Burton* presumption did not arise because the accused's last period of confinement "was unrelated to the initial charges." 5 M.J. at 38.

Although not completely identical to the case before us because *Nash* concerned a speedy trial motion raised at a trial on the initial set of charges, the rationale expressed in *Nash* leads us to conclude that the military judge in this case did not err. Although the appellant's apprehension by civilian authorities on 22 October 1990 may have been the precipitating event that caused a reassessment of the appellant's status prior to his special court-martial, we find that the offenses for which the appellant was arrested on 22 October were neither "the basis for" the appellant's pretrial confinement under R.C.M. 304(e), nor the charges for which the appellant was "held in pretrial ... confinement" under R.C.M. 707(d). That is equally true of the five potential offenses involving

the use of cocaine that were never prosecuted. They were all, nevertheless, factors supporting the commanding officer's determination that the appellant should be confined pending the prosecution of the two offenses already referred to trial. Consequently, we conclude that the appellant was not confined on 23 October "in connection with" the distribution of cocaine that occurred on 22 October 1990 and the 90–day clock of R.C.M. 707(d) did not begin on that date.

Regardless of the reasons that prompted the appellant's commanding officer to seek jurisdiction over the distribution offense 6 weeks after the appellant was arrested for that offense and never attempt to prosecute the other potential use offenses, it does not appear from the evidence that it was a subterfuge simply to prolong the appellant's incarceration prior to a trial for the offenses now before us. We note that (1) the appellant could have been effectively removed from the naval service almost immediately after the conclusion of his special court-martial by being placed on involuntary appellate leave and (2) the convening authority had not sought and was not seeking the authority to prosecute the appellant for the distribution offense at the time the decision was made on 23 October to place him in pretrial confinement.

As to when the period of Government accountability actually began under R.C.M. 707(d) and whether it should start at some time after 23 October but before 5 December 1990, the applicable rule under *Burton* would start the period of accountability for an accused already in pretrial confinement for earlier charges when the Government possessed "substantial information" on which to base the preferral of the later charges. *United States v. Johnson,* 23 U.S.C.M.A. 91, 93, 48 C.M.R. 599, 601, 1974 WL 13870 (1974). We find no precedent from our Superior Court, however, on whether this rule also applies to the 90–day presumption under R.C.M. 707(d), and this Court has declined to apply it. *United States v. Nelson,* 28 M.J. 922 (N.M.C.M.R.1988); *contra United States v. Honican,* 27 M.J. 590, 591 (A.C.M.R.1988); *United States v. Boden,* 21 M.J. 916, 917–918

(A.C.M.R.1986). We need not rely solely upon such a distinction in this case, however.

Even if we were to apply the *"Johnson* rule" to the case before us, it would not appear to benefit the appellant, who does not argue that the Navy had sufficient information on which to prefer charges prior to their actual preferral on 6 December. To the contrary, the appellant points out that his commanding officer did not take steps to investigate the charges before the Court until the decision was made to seek jurisdiction from federal civilian authorities. Appellant's Brief at 8. The Court of Military Appeals discussed the application of the *Johnson* rule in a similar situation in *United States v. Ward,* 1 M.J. 21 (C.M.A.1975), when Ward was placed in pretrial confinement in connection with an initial set of offenses and about 2 months later state authorities offered to relinquish jurisdiction over a different offense which Ward had been indicted for in state court. In applying the *Burton* presumption, the Court held that the period of Government accountability began the next day, when the case file on that other offense was received by the Navy trial counsel, even though it ultimately became known that the U.S. Government had exclusive jurisdiction over the offense all along. 1 M.J. at 24–25.

More recently, in applying the 120–day rule of R.C.M. 707, the Court of Military Appeals addressed the question whether the Government had good cause to delay an Article 32 investigation pending the prosecution of an accused by the U.S. Department of Justice in a U.S. District Court. *United States v. Duncan,* 38 M.J. 476 (C.M.A.1993). Although acknowledging "many doubts" about the Government's proposition that such a delay was for good cause in that particular case, the Court stated:

> [W]e realize that often it will be desirable to defer proceedings in one court while related proceedings are completed in another court. *Cf. Woodrick v. Divich,* 24 M.J. 147 (C.M.A.1987). We are convinced, however, that—absent extraordinary circumstances not present here—a delay for this reason is excludible on grounds of "good cause" only when the accused is informed at the time of the purported rea-

son and given some opportunity to contest the decision.

38 M.J. at 480. The appellant here, however, was fully informed of the basis for both his initial pretrial confinement in October and his re-confinement in December and of his commanding officer's decision to seek jurisdiction over the cocaine distribution offense.

We conclude, therefore, that for the purpose of applying the 90–day rule of R.C.M. 707(d), the period of Government accountability began when the appellant was confined in connection with the distribution of cocaine offense on 5 December 1990.

### III. Speedy Trial—Article 10 and the 6th Amendment

■ The appellant also contends that even if the period of Government accountability under R.C.M. 707(d) began on 5 December, he was nevertheless denied his right to a speedy trial under the Code and the Constitution. We note initially that Article 10 establishes a more rigorous standard than the 6th Amendment to the Constitution, *United States v. King,* 30 M.J. 59, 62 n. 5 (C.M.A. 1990) (citing *United States v. Powell,* 2 M.J. 6 (C.M.A.1976) and *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409, 1973 WL 14746 (1973)), and that civilian confinement due to an alleged civilian offense is not attributable to military authorities for speedy trial purposes under Article 10. *United States v. Williams,* 12 U.S.C.M.A. 81, 30 C.M.R. 81, 1961 WL 4403 (1961). Consequently, the period of military accountability for the appellant's right to a speedy trial did not begin with his arrest and incarceration by the District of Columbia on 22 October 1990, and we find no due process violation in the delay between October 22nd and the imposition of restraint on 5 December 1990. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

■ "[T]he touch stone for measurement of compliance with the provisions of the Uniform Code [as to the right to a speedy trial] is not constant motion, but reasonable diligence in bringing the charges to trial. Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppres-

sive." *United States v. Tibbs*, 15 U.S.C.M.A. 350, 353, 35 C.M.R. 322, 325, 1965 WL 4672 (1965) (citations omitted). In assessing reasonable diligence, the length of the delay, the reasons for the delay, any assertion by the accused to his right to a speedy trial, and any prejudice to the accused are the elements to be considered in an ad hoc balancing test. *United States v. Amundson*, 48 C.M.R. 914, 917 (N.C.M.R.1974) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), *aff'd* 23 U.S.C.M.A. 308, 49 C.M.R. 598, 1975 WL 15881 (1975)). Balancing these elements in the present case, we conclude that the Government acted with reasonable diligence in bringing these offenses to trial and that the appellant was not denied his right to a speedy trial.

### IV. Sentence Appropriateness

The appellant, by his third assignment of error, complains that the sentence to confinement of five years is excessive because it is almost four times the amount suggested by the Federal Sentencing Guidelines. As the appellant has readily conceded, the Federal Sentencing Guidelines do not apply to trial by courts-martial. Furthermore, the sentence as adjudged is well within the maximum permissible punishment. The court members were properly instructed as to the maximum punishment which could have been adjudged, and no objection was made to that instruction by the appellant. Based upon our own assessment, we find the adjudged sentence appropriate under the circumstances of this case.

### V. Factual Sufficiency

In his fourth assignment of error, the appellant contends that the government failed to prove beyond a reasonable doubt the charge that he had conspired to wrongfully distribute cocaine. Upon careful review of the entire record of trial we are convinced beyond a reasonable doubt of appellant's guilt of conspiring to distribute cocaine. *See United States v. Turner*, 25 M.J. 324 (C.M.A. 1987).

Having concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed, the findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge WELCH and Judge McLAUGHLIN concur.