UNITED STATES, Appellee,

v.

Danzel D. WILLIAMS, Staff Sergeant,
U.S. Army, Appellant.

No. 57,401.

CM 448278.

U.S. Court of Military Appeals.

Sept. 28, 1988.

For Appellant: *Captain Stephanie C. Spahn* (argued); *Colonel John T. Edwards, Major Eric T. Franzen, Major (P) Russell S. Estey* (on brief); *Colonel Brooks B. La Grua, Lieutenant Colonel Joel D. Miller, Major Marion E. Winter, Captain Keith W. Sickendick.*

For Appellee: *Captain George R. Gillette* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Byron J. Braun* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In 1985, appellant was tried by a general court-martial composed of a military judge and officer members at Fort Lewis, Washington. Contrary to his pleas, he was found guilty of the rape of his 6–year-old step-daughter, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. He was sentenced to a dishonorable discharge, confinement for 7 years, and reduction to E-1. The convening authority approved the sentence. The Court of Military Review affirmed a finding of guilty of attempted rape under Article 80, UCMJ, 10 USC § 880, and reassessed his sentence, reducing the period of confinement to 5 years. 23 M.J. 792 (1987).

This Court granted review on the following questions of law:

I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING A DEFENSE WITNESS TO TESTIFY, OVER DEFENSE COUNSEL'S OBJECTION, ABOUT THE VICTIM'S CHARACTER FOR TRUTHFULNESS.

II

WHETHER THE MILITARY JUDGE ERRED WHEN HE SUSTAINED TRIAL COUNSEL'S HEARSAY OBJECTION TO A DEFENSE WITNESS' TESTIMONY ABOUT HER OWN BLOOD TYPE.

We hold that the military judge did err in allowing this witness to testify about the victim's truthfulness. *See generally United States v. Azure*, 801 F.2d 336, 341 (8th Cir.1986). However, we conclude that this error was harmless. Art. 59(a), UCMJ, 10 USC § 859(a). In addition, we hold that under the circumstances of this case, the judge did not err in rejecting as inadmissible hearsay the defense witness' testimony concerning her blood type. Mil.R.Evid. 103, Manual for Courts-Martial, United States, 1984.

The facts of this case are generally outlined in the Government's final brief, as follows:

Mrs. Marian Williams, appellant's wife and the mother of the female victim Sharice Bryant, testified that appellant was Sharice's step-father. On the evening of 3 May 1985, Mrs. Williams had taken her son (by appellant) and Sharice out shopping, returned home, bathed the children, and dressed Sharice. Mrs. Williams then told Sharice and her brother to play upstairs while she watched television. Her husband had gone to a baseball game earlier that day and had returned home "heavily intoxicated," according to Mrs. Williams.

While Mrs. Williams was watching a television program, she heard coins being thrown down the stairs, so she told the children to be quiet. At that time her husband was also upstairs. Sometime later Sharice came down the stairs crying; after initially stating that she couldn't tell her mother what was wrong, Sharice said that appellant had "tried to put his thing in her."

The victim, Sharice Bryant, age seven, testified that she remembered the night when she and appellant were upstairs in the bedroom while her mother was downstairs watching television. She and her brother had gone to her parent's bedroom to play. Appellant was on the bed taking a nap. After she and her brother started playing, appellant took something and threw it down the stairs (she testified that it sounded like a coin), and told her brother to go fetch it. Her brother went downstairs, leaving Sharice alone with appellant on the bed. Sharice testified that her father then "took his thing out," and she pointed at counsel's crotch when asked where her step-father's "thing" was located. She described it as looking like a finger. Appellant began removing her clothes, pull-

ing her pants and panties down and fully off of one leg. Appellant then rubbed his "thing" on her crotch area, not where she went pee-wee but "where it's covered at." Sharice testified that it felt bad because appellant "pushed it too hard." The victim stated that appellant also put his finger in her which hurt too.

Chief Warrant Officer Two (CW2) Phillip R. Mills, a forensic chemist from the U.S. Army Criminal Investigations Laboratory, Fort Gordon, Georgia, was qualified by the court as an expert in the field of serology (the science dealing with the properties and actions of blood), and testified that he had tested a sample of Sharice's saliva, appellant's blood, and swabs of fluid obtained from appellant's hand and penis. The samples pertaining to appellant had been obtained on 4 May 1985. Sharice's saliva established that she had Type A blood, and the secretions on appellant's hand and penis tested positive for Type A blood. SGT Williams' blood was determined to be Type O. CW2 Mills also testified that he found no evidence of appellant's semen in Sharice's vagina.

Appellant testified at trial that he had not rubbed his penis on, nor attempted to insert it into, Sharice's vagina. He explained the presence of vaginal secretions on his penis by admitting to having extra-marital sex with two different women (Ms. Mary Wisely and Ms. Sherry Barron) shortly before and shortly after the alleged rape. He testified that he inserted his fingers into the vaginas of both women. Both Ms. Wisely and Ms. Barron corroborated appellant's testimony as to their sexual relations with him on 2 and 3 May, respectively. Ms. Wisely attempted to testify as to her blood type (A positive), but the military judge sustained trial counsel's hearsay objection to the testimony and instructed the court members to disregard it. Appellant averred that he had not bathed after having intercourse with the women, stating that he often went three or four days without a shower. Appellant admitted making a prior inconsistent state-

ment to military police authorities (i.e., that he had been awakened by his wife and not Sharice and his son on the evening of the rape). Appellant also acknowledged that he had lied to a criminal investigation agent concerning his alleged sexual intercourse with Ms. Barron on 4 May. Instead of describing his activities with Ms. Barron, he apparently fabricated a story about going to a night club. Appellant explained his prevarication as an attempt to not involve Ms. Barron.

(Record citations omitted.)

Additional facts necessary for our review are also stated in the defense's final brief, as follows:

Sergeant Phyllistine Williams, a lawyer's assistant in the Trial Defense Service Office at Fort Lewis, Washington, testified as a defense witness concerning prior inconsistent statements made by the alleged victim, Sharice Bryant. Sergeant Williams had been present at two interviews of Sharice which had been conducted by appellant's defense counsel. During cross-examination, the following colloquy took place between trial counsel, Sergeant Williams, defense counsel, and the military judge:

TC: Are you the same Sergeant Williams who has just testified in this trial?

A. Yes, sir.

TC: I remind you you're still under oath. Sergeant Williams, how long was the first interview that you attended with Captain McNeish and Sharice Bryant?

A. The first interview lasted about an hour.

TC: And how long was the second interview?

A. About a half hour.

TC: Sergeant Williams, based on your observations of Sharice Bryant and the time you spent with her, have you formed an opinion concerning her truthfulness?

A. Yes, sir.

TC: What's your opinion of her truthfulness?

DC: Objection, Your Honor. Not sufficient basis.

MJ: Overruled. I'll let her answer.

TC: Sergeant Williams, what's your opinion of Sharice Bryant's truthfulness after hearing her on two different occasions?

A. In my opinion, sir, she's truthful.

(Record citations omitted.)

## I

The first granted issue asks whether the military judge erred in permitting a defense witness to testify on cross-examination about the alleged victim's "truthfulness." *See* Mil.R.Evid. 608(a). The defense objected because there was "[n]ot sufficient basis" for her testimony. We agree and hold there was not a sufficient showing of "personal knowledge of the" victim or her character. Mil.R.Evid. 602. *See* Mil.R.Evid. 608. *See generally United States v. Perner,* 14 M.J. 181 (C.M.A.1982).

■ Turning first to admission of the challenged testimony as character evidence under Mil.R.Evid. 608(a) [1], the key question is whether Sergeant Williams was shown to have sufficient personal knowledge of the victim to render a reliable opinion on this matter. Mil.R.Evid. 602. *See United States v. Perner, supra* at 185. We agree that the duration of the acquaintance of the witness and the person whose character for truthfulness is at issue may not be critical. *See United States v. Watson,* 669 F.2d 1374, 1382 (11th Cir.1982). However, the nature of the acquaintance or the way the witness formed an opinion of the person's character must be considered in assessing its predicate reliability. *United States v. Dotson,* 799 F.2d 189, 192–93 (5th Cir. 1986). An hour and a half stint as a disin-

terested and uninvolved witness to a defense interview fails this test for reliable character assessment. *Id.* at 194. *See United States v. Perner, supra.*

■ This error, however, was clearly harmless under the circumstances presented in this case. First, this defense witness' testimony was cumulative. More particular and pertinent testimony regarding the child's truthfulness was offered by the victim's mother, and the accused failed to particularly contest it. *See United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.), *cert. denied,* 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979). More importantly, the defense witness' truthfulness testimony was not provided by an "expert" in truth-telling or by a person who could reasonably be perceived to possess such an ability. *Cf. United States v. Arruza,* 26 M.J. 234 (C.M. A.1988). Thus, the possibility that "[t]his pedestrian conclusion" would "sweep" the members "off their feet" was not great. *See United States v. Roy,* 843 F.2d 305, 308–09 (8th Cir.1988). Finally, viewing the Government's evidence of guilt, including the medical evidence, we simply do not consider this character evidence to be substantial. *See United States v. Awkard, supra. Cf. United States v. Azure, supra* at 341.

## II

The second issue in this case concerns admissibility of Ms. Wisely's testimony concerning her blood type. This defense witness conceded that she had no personal knowledge of this fact (*see* Mil.R.Evid. 602) but she stated that her doctor, after testing her blood, told her that it was A-positive. *See* Mil.R.Evid. 801(c). The prosecution objected to this testimony on hearsay grounds (Mil.R.Evid. 802), and the defense responded that it was admissible under Mil.

---

**1.** The testimony of this witness might also be construed as her opinion as to the specific believability and truthfulness of the victim's story rather than her opinion as to the victim's character for truthfulness. *See United States v. Azure,* 801 F.2d 336, 341 (8th Cir.1986). The former opinion is not admissible at all under Mil.R.Evid. 608 (a). *See United States v. Scop,*

846 F.2d 135, 142 (2d Cir.1988); *United States v. Cecil,* 836 F.2d 1431, 1441–42 (4th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). However, no objection was made to the form of her testimony (*see* Mil.R. Evid. 103), and trial counsel's closing argument indicated this testimony was offered to show the victim was a "truthful person."

R.Evid. 803(3) or (4). The military judge refused to admit this testimony.

■ The general existence of blood types for human beings is a matter "of common or ordinary knowledge." *Shanks v. State*, 185 Md. 437, 45 A.2d 85, 90 (1945). However, the determination of a person's particular blood type is a process requiring specialized knowledge of a scientific nature, and its proof requires expert testimony. *See* P. Giannelli and E. Imwinkelried, *Scientific Evidence* § 17–8 (1986); Annot., 2 A.L.R. 4th 500, 507–08 (1980); 1A Wigmore, *Evidence* § 165a (Tillers rev. 1983). Here, the defense attempted to prove Ms. Wisely's blood type by offering a statement from her doctor. However, it relied on hearsay evidence and did not call the doctor himself to testify. *See United States v. Murphy*, 23 M.J. 310 (C.M.A.1987).

Mil.R.Evid. 803(3) permits admission of hearsay evidence of statements by an out-of-court declarant as to a "[t]hen existing mental, emotional, or physical condition." Here, the doctor's statement was offered to show Ms. Wisely's blood type. Since out-of-court statements as to someone else's existing condition do not fit within the letter or rationale of this rule, her testimony was inadmissible on this basis. *United States v. Stanley*, 21 M.J. 249 (C.M.A. 1986). *See* Drafter's Analysis, Mil.R.Evid. 803(3), Manual, *supra* at A 22–43. Mil.R.

2. We note that appellant made no further effort to prove this witness' blood type by any other form of admissible hearsay evidence. *See Dock-*

Evid. 803(4), as well, provides no solace for appellant. It covers statements made by an out-of-court declarant "for purposes of medical diagnosis or treatment" and is grounded in the self interest of the patient in seeking medical assistance. *See United States v. Welch*, 25 M.J. 23, 25 (C.M.A. 1987). However, the doctor's statements to the patient in response do not qualify as reliable under this rule.

Arguably, the challenged testimony might have been admitted under Mil.R. Evid. 803(24) or Mil.R.Evid. 804(b)(4)(B). These bases for admission were not asserted by defense counsel at trial. *See* Mil.R. Evid. 103(a)(1). Moreover, appellant did not show the unreasonableness of producing Ms. Wisely's doctor (*see* Mil.R.Evid. 803(24)(B)) or his unavailability to testify at this trial. *See* Mil.R.Evid. 804(a). He also did not offer any argument to the judge that a blood type was a matter of personal history within the meaning of Mil.R.Evid. 804(b)(4). *See United States v. Carvalho*, 742 F.2d 146, 151 (4th Cir.1984). Appellant as proponent of admission of this evidence did not meet his evidentiary burden under these rules.[2] *Cf. United States v. Vanderwier*, 25 M.J. 263, 265 (C.M.A.1987).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

*ery v. State*, 269 Ala. 564, 114 So.2d 394, 399–400 (1959).