**UNITED STATES**

v.

**Joseph J. TEBSHERANY, 105 48 8093, Disbursing Clerk Third Class (E–4), U.S. Navy.**

**NMCM 88 3016C.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 5 June 1987.

Decided 2 Feb. 1990.

Reconsideration Denied 5 March 1990.

Lt. Jeffrey S. Horwitz, JAGC, USNR, Appellate Defense Counsel.

L. Cdr. Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and STRICKLAND and RUBENS, JJ.

RUBENS, Judge:

Contrary to his pleas, a general court-martial composed of officer members convicted appellant of one specification of conspiracy to commit larceny (more than $50,-000.00), two specifications of unauthorized absence, one specification of missing movement by neglect, fourteen specifications of larceny (total more than $50,000.00), and twenty-four specifications of forgery (U.S. Government checks or military payroll money lists) in violation of Articles 81, 86, 87, 121, and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 886, 887,

921, and 923, respectively. The members sentenced appellant to a bad-conduct discharge, confinement for ten years and three months, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the sentence as adjudged.

We have examined the record of trial, considered the five assignments of error, and heard oral argument. We issued an opinion in this case on 7 December 1989; however, we granted appellant's 28 December 1989 motion for reconsideration on 22 January 1990. Upon reconsideration, we substitute this opinion in its place. We will discuss the assignments of error in the order they were raised.

I

Appellant's first assignment of error is that he was denied the right to a speedy trial under Rule for Courts–Martial (R.C.M.) 707(d), Manual for Courts–Martial (MCM), United States, 1984. Appellant specifically argues that the military judge erred in two respects: first, he should have counted both the first and last day of pretrial confinement or arrest, and not just the last day; and second, he should have found the period from 20 to 23 November 1986 to be pretrial arrest tantamount to confinement.

■ The military judge entered findings that appellant was confined from 26 August to 20 November 1986 and that he was in pretrial arrest from 23 to 26 November 1986. For each of these periods the military judge excluded the first day and counted the last day of the period. He concluded that these two periods (86 and 3 days, respectively) totalled 89 days and, accordingly, denied the motion to dismiss. R.C.M. 707(b) expressly states that this is the computational method for calculating the 120 day speedy trial clock of R.C.M. 707(a), but on its face does not expressly apply to R.C.M. 707(d), which does not con-

tain a computational scheme. The second paragraph of the Discussion to R.C.M. 707(d) states the presumption first announced in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), that an accused's right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810, has been violated when he has been held in pretrial confinement for more than 90 days (excluding certain deductible periods). Appellant argues that R.C.M. 707(d) manifests the intent of the President to include all days of pretrial confinement or arrest, *i.e.,* to count both the first and the last day. We disagree.

The R.C.M. 707(d) Discussion alerts practitioners to the *Burton* presumption, but does not codify it. *See* paragraph 4, Part I, MCM, 1984 (supplementary materials accompanying the MCM are not binding). The *Burton* presumption exists because it is precedent, not because the President has promulgated it as a rule in the MCM. R.C.M. 707(a) and (b), on the other hand, create a new 120 day speedy trial rule. A considerable body of case law developed around *Burton* before it ever appeared in the Discussion to the MCM. This case law includes *United States v. Manalo*, 1 M.J. 452, 453 (C.M.A.1976), which held "the day of the event is to be excluded while the last day of the period is to be included." *See United States v. Cherok*, 19 M.J. 559 (NMCMR 1984).[1] *Manalo* and *Cherok* predate MCM, 1984, but there is nothing in the new MCM or its analysis to suggest that the President intended to apply *Burton* more stringently under MCM, 1984.[2] In fact, the analysis to R.C.M. 707(b) states that it is based on *Manalo*. Analysis to R.C.M. 707(b), p. A21–37, MCM, 1984. Moreover, the analysis encourages the judicial reexamination of the *Burton* presumption because of the expanded protection in R.C.M. 707(a). Analysis to R.C.M. 707(d), p. A21–38, MCM, 1984. It would be illogical to urge *Burton's* reexamination while applying it more stringently. Accordingly,

---

1. *See also United States v. Estrada*, No. 88–1956 (NMCMR 28 June 1989) (post MCM, 1984, decision applying the R.C.M. 707(b)(1), MCM, 1984, computational scheme to *Burton* presumption without comment).

2. After all, this isn't the President's presumption.

we find that the military judge did not err in excluding the first day and counting the last day of these two periods for 90 day speedy trial purposes.[3]

■ Appellant also asserts that the military judge erred by not finding the period from 20 to 23 November 1986 to be pretrial arrest tantamount to confinement. Appellant's theory is that he was restricted under conditions so onerous that the period should be credited to him as pretrial confinement for *Burton* purposes. Although he presented evidence that he was restricted during this period (*i.e.*, restriction papers, the restraint block of the charge sheet, and a naval message from COMFAIRMED so show), the Government presented the stipulated testimony of Chief Petty Officer Capista that on orders of the Staff Judge Advocate, he informed appellant on 21 November 1986 that he was no longer on restriction. Appellant admitted during testimony on the motion that he attended no restriction musters thereafter. We find, as did the military judge, that appellant's restriction ended on 21 November 1986.

The evidence of record shows that appellant stayed in a barracks in Naples, Italy, from 20 to 23 November and in a hotel on Palma de Mallorca, Spain, from 23 to 26 November. Appellant argues that even if he was not technically restricted he had no freedom of movement during these periods because he had no military identification card or orders, no passport, little money, few clothes, and his presence there was in violation of international law. The military judge agreed about the 23 to 26 November period and found that these days were arrest tantamount to confinement. We disagree and find that the appellant's living conditions from 20 to 26 November did not

constitute arrest tantamount to confinement for *Burton* purposes.

Appellant was in Naples and Palma de Mallorca because he was traveling from the termination point of his lengthy unauthorized absence in the United States to his ship. The paucity of clothing and pay are necessarily incident to such a return. The Government met appellant's shelter and sustenance needs in the barracks in Naples and the NIS agent accompanying appellant billeted him in a hotel and provided him with access to room service in Palma de Mallorca, a resort. This time lapse between the termination of appellant's absence and the return to his ship for disposition of the charges against him is not chargeable to the Government under these circumstances. *United States v. Turk*, 24 M.J. 277, 278 (C.M.A.1987). Accordingly, the first assignment of error is without merit.

## II

■ Appellant's second assignment of error is that he was denied the right to a speedy trial under R.C.M. 707(a), MCM, 1984. This rule states that accused shall be brought to trial within 120 days of the earlier of the imposition of pretrial restraint or notice of preferral of charges under R.C.M. 908, MCM, 1984. The military judge found that the accused was first confined on 26 November 1986 and that the Government was responsible for two periods of delay thereafter: 94 days between 26 August and 26 November and 21 days between 4 March 1987 and 25 March 1987, the day of trial, for a total of 115 days. Appellant argues that notwithstanding R.C.M. 707(c)(3), MCM, 1984, the military judge erred in excluding the delay attributable to a defense requested continuance from 28 November 1986 to 8 January 1987

3. The R.C.M. 707(b) computational rule is also pragmatic. In computing R.C.M. 305(k) and *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985), "tantamount to confinement" credit, the Army Court of Military Review applied R.C.M. 707(b) and observed that "[t]he exclusion of the date of inception from computation avoids the necessity to litigate the issue of credit due on other than a whole day basis, and we believe fairly gives the defense credit for one of the

incomplete days and the Government credit for the other for purposes of computation." *United States v. New*, 23 M.J. 889, 891 (ACMR 1987). *But cf. United States v. Deloatch*, 25 M.J. 718 (ACMR 1987) (Court declined to follow *New* and counted each day in determining the number of days of confinement for initial review officer review purposes under R.C.M. 305(i), MCM, 1984).

(*i.e.*, 41 days) because the Government caused the delay by deliberately manipulating the discovery process. *See United States v. Ruhling*, 28 M.J. 586, 590–591 (NMCMR 1989) (Government caused defense continuance requests may result in delay chargeable to the Government). We disagree for two reasons.

■ First, with one exception discussed below, the trial counsel need not provide discovery under R.C.M. 701(a)(1), MCM, 1984, until as soon as it is practicable to do so after service of referred charges under R.C.M. 602, MCM, 1984. The charges were referred and served on the accused on 17 March 1987. Although defense counsel apparently made five discovery requests before this date (one as early as 25 November 1986), the Government provided the last item about which appellant now complains by 26 March 1987. Thus, the Government's delay in providing discovery after referral is minimal.

■ The one apparent exception to the rule which requires the Government to provide discovery as soon as practicable after service of referred charges is R.C.M. 701(a)(6), MCM, 1984, which requires the Government to provide material which reasonably tends to negate or reduce an accused's guilt (*i.e., Brady*[4] material) as soon as it is practicable to do so without reference to referral and service of charges. Appellant argues that the Government intentionally manipulated the discovery process by failing to turn over exculpatory material until a few minutes before the first Article 39(a), UCMJ, session on 26 March 1987, three and one half months after the Government learned of its existence. This evidence (AE 12) is the 3 December 1986 report of Mr. Nelson, a questioned document examiner. Appellant alleges the report is clearly exculpatory since it shows that DK1 Jones, another clerk in the disbursing office, could not be eliminated as the author of some of the forged signatures and that several of the questioned signatures might not have been forgeries. However, the Government need not provide such material before referral, *i.e.*, before any other discoverable material, when the exculpatory value of the evidence is not apparent. *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 336 n. 1, 102 L.Ed.2d 281, 288 n. 1. (1988). Moreover, the relevance of exculpatory material may not be apparent until the defense has presented its case. *United States v. Calara*, 21 M.J. 259 (C.M.A.1986). We find that the exculpatory nature of Mr. Nelson's evidence with respect to DK1 Jones was not readily apparent at the time it came to the Government's attention.

The fact that others cannot be excluded as having made some of the forgeries tends to spread the culpability among a larger class of potential accused (given the conspiracy allegation), but does not necessarily exculpate appellant. Moreover, although the defense counsel during cross-examination elicited this evidence from Mr. Nelson, a government witness on the merits, appellant was convicted nonetheless of the offenses to which this evidence was relevant. Thus, the exculpatory potential of this evidence was not strong. We conclude that the Government did not err in not turning this material over to the defense until the eve of trial.[5]

Even if Mr. Nelson's evidence is clearly exculpatory, however, there is no nexus or causal link between the timing of the release of the material and the defense requested continuance even if the Government had intentionally manipulated the discovery process.[6] The 27 November 1986

**4.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**5.** This is not to say, however, that we commend the Government for turning over this material at such a late date because the better policy is to hand over discoverable material as soon as it is received.

**6.** The Government's intentional manipulation of the discovery process would raise military due process of law concerns regardless whether it resulted in delay. *See generally United States v. Berrey*, 28 M.J. 714 (NMCMR 1989) (relationship between speedy trial and military due process of law). We find, however, that the Government did not intentionally manipulate

defense request for a continuance in the scheduled Article 32, UCMJ, investigation did not state or imply that the request was caused by Government discovery intransigence or that the defense would not accept responsibility for the time. Moreover, the defense counsel's 26 November 1986 handwritten note to the trial counsel (AE 56) states specifically that the defense waived any speedy trial issue beyond that date. There is not a hint in the note that the Government's admittedly slow compliance with the spirit of the customary open military discovery process induced the request. Rather, the defense request indicates that it was motivated by other tactical concerns (*i.e.,* pretrial agreement negotiations). The Government was entitled to rely on these defense representations. *United States v. Cherok,* 22 M.J. 438 (C.M.A.1986). Accordingly, the second assignment of error is without merit.

### III

■ Appellant's third assignment is that the military judge erred in admitting Prosecution Exhibit 67 (an automobile purchase order) and the testimony of Mr. Riddle, the general sales manager of an automobile dealership, which showed that appellant made an $8000.00 cash down payment on an automobile on 31 December 1985. Trial defense counsel objected on the grounds that this evidence violated Military Rule of Evidence 403, MCM, 1984, in that it prejudiced the members into believing that appellant led an extravagant lifestyle and that this prejudice substantially outweighed its probative value. The trial counsel responded that this evidence, coupled with the evidence of appellant's gambling activities and his having $1,500.00 in cash in the glove compartment of the same vehicle one week after its purchase, was relevant [7] and not unduly prejudicial. The military judge stated that, contrary to defense assertions, this was not an emotional issue and the Government was entitled to show that the "accused was in possession

of a large amount of money, much larger than would be expected from a person of his pay grade," and overruled the objection.

Mil.R.Evid. 403, MCM, 1984, states "[a]lthough relevant, evidence may be excluded if its *probative value is substantially outweighed by* the danger of unfair prejudice, waste of time, or needless presentation of cumulative evidence" (emphasis added). In Specifications 2 through 11 of Charge II the Government alleged that appellant stole over $20,000.00 in U.S. Currency between 14 July and 30 December 1985 and was entitled to prove these allegations. We find evidence that appellant was in possession of a substantial sum of cash, more than would ordinarily be expected of a junior third class petty officer, is strong probative circumstantial evidence that he stole this money. This kind of evidence, in fact, is not unusual in larceny, forgery, and tax evasion prosecutions. We also find, as did the military judge, that this is not emotionally tinged evidence which would have a tendency to inflame the members. Military members would not be unfairly inflamed by evidence that appellant bought a car, even when the purchase included a substantial down payment. It is not unusual for servicemembers, even junior enlisted ones, to purchase moderately priced automobiles. The cash down payment is unusual, however, and fairly supports the inference the Government argued. Accordingly, we conclude that the probative value of this evidence is not outweighed by its prejudicial value. The third assignment of error is without merit.

### IV

Appellant's fourth assignment is that the military judge erred in admitting Prosecution Exhibits 59 through 62, various documents from Resorts International Casino Hotel, Atlantic City, and in allowing the testimony of Mr. Johnson, the custodian of records at the hotel. Prosecution Exhibit 61 is a credit application made by appellant

---

the discovery process to induce defense requested delay.

7. Appellate Government counsel states that this evidence is relevant to show "unexplained affluence." Government Brief at 11.

to "put front money into the cage area." Prosecution Exhibit 62 is a portion of appellant's customer action report describing his gambling activities at the hotel. Mr. Johnson authenticated these exhibits, provided the foundation for the business records hearsay exception, and explained what the forms meant. The trial counsel stated that the purpose of the testimony was to "establish that Petty Officer Tebsherany was spending large sums of cash during the period of time that the Government alleges the money was being taken from the USS BAINBRIDGE ... evidence of an extravagant lifestyle as well as his motive and intent to take money from the USS BAINBRIDGE."

■ Defense counsel objected on essentially three grounds: first, that Mr. Nelson was not competent to authenticate the documents; second, that Prosecution Exhibits 59 and 60 (*i.e.*, the "hotel bill") were not relevant; and third, that Mr. Johnson's explanation of parts of some of the documents was inadmissible hearsay. Although the military judge stated that Mr. Johnson was "probably not the person most capable of interpreting these items," he found that the witness did provide an adequate foundation that the various documents were records of regularly conducted activity within Mil.R.Evid. 803(6), MCM, 1984. We agree. *See United States v. Debabneh*, 28 M.J. 929 (NMCMR 1989) (the foundation witness must have sufficient familiarity with the activity the documentation records to provide the military judge with a rational basis for concluding by a preponderance of the evidence that the elements of the business record exception were met).

■ Prosecution Exhibits 59 through 62 and Mr. Johnson's testimony were clearly relevant to demonstrate appellant's extravagant lifestyle as a gambler, *i.e.*, that he was a "high roller," facts which support the permissive inference that appellant stole the money with which he apparently lived beyond his means. The fact that some of the hotel services were complimentary is not important because, as Mr. Johnson testified, the Casino gave appellant complimentary services due to the scale of his gambling activities. Indeed, the fact that the services were complimentary supports an even stronger inference of larceny than had appellant paid for them. The probative value of this evidence certainly outweighs any tendency to confuse the issues or mislead the members. *See* Mil.R. Evid. 403, MCM, 1984.

■ Mr. Johnson, however, did have difficulty explaining some of the entries on Prosecution Exhibit 62. During cross-examination at an Article 39(a), UCMJ, session he admitted that in his interview with the defense counsel one hour before the session he did not understand the "cash column" entry, but that after calling Mr. Kowal (the man who originated the form) in Atlantic City he then understood. Appellant argues that this is inadmissible hearsay, citing *United States v. Williams*, 26 M.J. 487 (C.M.A.1988). We disagree.

■ Unlike *Williams*, where the military judge permitted a witness to testify that her medical doctor told her that her blood type was A positive, Mr. Johnson did not testify that the sole basis for his testimony about the entries was Mr. Kowal or, in fact, even mention his name on direct examination. Rather, he testified that their conversation clarified his understanding of the entries. Unlike *Williams*, where the witness could only repeat what she was told without further understanding and could not be cross-examined about the statement, Mr. Johnson could explain the entries on Prosecution Exhibit 62, or similar documents, and was cross-examined thereon. "Hearsay is a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered to prove the truth of the matter asserted." Mil.R.Evid. 801(c), MCM, 1984 (emphasis added). Mr. Johnson's testimony was his own; he was not merely repeating a statement made by Mr. Kowal, but rather absorbed what Mr. Kowal said, evaluated it in light of what he already knew about the documents, and came to more fully understand the documents. Mr. Johnson's explanations were not an out of court statement and, therefore, were not hearsay. Indeed, witnesses (like all human be-

ings) understand matters by reading about them, talking to others about them, or experiencing them. The recency of Mr. Johnson's understanding of the forms goes to weight, not admissibility. Even if some of the explanations involved elements of hearsay, however, we find that their admission was not prejudicial error under the circumstances. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The thrust of the evidence was that appellant was an active gambler for relatively high stakes; the exact dates, the precise amounts of wins and losses, and other specifics of his gambling activities were not important to the Government's case. Accordingly, the fourth assignment of error is without merit.

## V

▰ Appellant's fifth assignment is that his sentence to confinement for ten years and three months should be reduced because it is inappropriately severe in light of the 30 month sentence received by LTJG Pahnos, the disbursing officer and co-conspirator. We disagree and specifically find the sentence appropriate under all the circumstances. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge ALBERTSON and Judge STRICKLAND concur.