**UNITED STATES, Appellee,**

v.

**Stanley R. GREER, Airman U.S. Navy, Appellant.**

No. 50687.
NMCM 84–0895.

U.S. Court of Military Appeals.

Feb. 17, 1986.

For Appellant: *Lieutenant Richard F. McManus, JAGC, USNR* (argued); *Commander David C. Larson; JAGC, USN* and *Lieutenant Louis F. Sadler, JAGC, USN* (on brief); *Lieutenant J. Cunyon Gordon, JAGC, USN.*

For Appellee: *Lieutenant Commander John B. Holt, JAGC, USN* (argued); *Captain W.J. Hughes, JAGC, USN* (on brief); *Captain Carl H. Horst, JAGC, USN* and *Commander Michael P. Green, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Appellant was charged with unauthorized absence, rape, forcible sodomy, and kidnapping, in violation of Articles 86, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C §§ 886, 920, 925, and 934, respectively. Pursuant to his pleas, he was found guilty of unauthorized absence. Contrary to his pleas, he was also convicted by the military judge sitting alone as a general court-martial of consensual sodomy and assault with intent to commit rape, in violation of Articles 125 and 134. His sentence to confinement for 5 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge was approved by the convening authority. The Court of Military Review affirmed the findings, but concluded under the circumstances that the sentence was inappropriately severe and reduced the period of confinement to 3 years. This Court specified the following issue for review:

WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY DISPOSITION OF THE CHARGES UN-

DER THE INTERSTATE AGREEMENT ON DETAINERS ACT, 18 U.S.C. APP.

Appellant contends that he was not tried within 180 days after he requested a trial under Article III(a) of the Interstate Agreement on Detainers, 18 U.S.C.App., Pub. L.No. 91–538, § 2, 84 Stat. 1397 (1970), and therefore the charges should be dismissed. We hold that the 180-day time limitation was never activated by appellant and affirm.

Prior to pleas, appellant moved to dismiss the charges for lack of speedy trial. The following is a chronology of pertinent events:

19 Sept 82 Sexual offenses committed; appellant apprehended by military authorities and placed in pretrial confinement.

1 Nov 82 Appellant requests speedy trial by military.

3 Dec 82 Appellant released from pretrial confinement.

5 Dec 82 Appellant commits offenses in Maryland, arrested by St. Mary's County, Maryland, authorities, and held on $25,000 bond.

6 Dec 82 Appellant declared AWOL.

7 Dec 82 Trial defense counsel requests convening authority to order a psychiatric evaluation of appellant.

14 Dec 82 Armed Forces Police place "military detainer" on appellant, informing St. Mary's County, Maryland, authorities of military charges pending and requesting to be notified when appellant available "for release to 'Military Control.'"

17 Jan 83 Trial defense counsel submits second request to convening authority for psychiatric exam of appellant, stating: "2. It is respectfully requested that the requested psychiatric evaluation be provided. One of the paramount interests of justice is a speedy disposition of the offenses charged against AN Greer. The Defense is aware of no actions to get AN Greer back under federal control. 3. The Defense respectfully requests that the Government inform the Defense of

what actions have been taken to reassert jurisdiction over AN Greer."

18 Jan 83 Appellant convicted in District Court, St. Mary's County, Maryland, of fourth degree sexual assault and sentenced to a year in jail.

4 Feb 83 Commanding Officer, Naval Legal Service Office, Washington, D.C., sends letter to Sheriff, St. Mary's County, Maryland, stating that "Navy intends to pursue" military charges pending against appellant. Referring to the Interstate Agreement on Detainers Act, it was requested that the sheriff notify that command of appellant's transfer or impending release.

8 Feb 83 Sheriff, St. Mary's County, Maryland, acknowledges receipt of 4 February letter.

14 Apr 83 Commanding Officer, Naval Legal Service Office, Washington, D.C., writes a letter to the Commissioner of Maryland Division of Corrections requesting that Maryland temporarily release appellant to military authorities for trial by general court-martial under authority of Interstate Agreement on Detainers Act.

18 Apr 83 Military judge approves the 14 April request for temporary custody of appellant and forwards the request to Maryland authorities.

25 Apr 83 Trial defense counsel requests convening authority to process appellant for Other Than Honorable Discharge in lieu of court-martial. In this request it is stated that "the accused through counsel reasserts his demand for a speedy resolution of the charges against him."

10 Sept 83 Appellant completes Maryland sentence, is returned to military control, and placed in pretrial confinement.

26 Sept 83 Court-martial begins.

"The Interstate Agreement on Detainers (Agreement) is a compact" entered into by "48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States." *Carchman v. Nash*, —— U.S.——,

105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The Agreement applies to the military, Pub.L. No. 91–538, *supra*, § 5, and has been adopted by the State of Maryland (codified in Maryland Annotated Code, Article 27, §§ 616A–616S). The Judge Advocate General of the Navy has promulgated instructions for implementation of the agreement in Manual of the Judge Advocate General (JAGMAN) 1315–1316.

The Agreement was motivated by a legislative determination "that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." The purpose of the Agreement, therefore, is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Art. I. To accomplish this, the Agreement provides procedures whereby a prisoner or member state may request disposition of outstanding detainers. Articles III and IV.

Article III establishes a procedure whereby a prisoner serving a sentence in one state (the sending state) may demand disposition of any untried charges on which a detainer has been lodged against him by another state (the receiving state). The official who has "custody of the prisoner" is required to inform him of the existence of the detainer and his rights under the Agreement. Art. III(c). A prisoner desiring final disposition of outstanding detainers must file a written demand with his custodian, who then forwards the demand "by registered or certified mail," along with a certificate stating the term of the commitment, time served, time remaining on the sentence, good time earned, and parole eligibility date of the prisoner, to the appropriate officials of the jurisdiction in which charges are pending. Art. III(a) and (b). When a prisoner makes such a demand, the authorities in the receiving state must bring him to trial within 180 days or the court must dismiss the charges "with prejudice." Arts. III(a) and V(c).

■ In order for appellant to invoke the Agreement's 180-day time limitation, then, (1) he must have entered upon a term of imprisonment; (2) a detainer must have been filed against him; and (3) he must have provided notice of the place of his imprisonment and requested final disposition of the charges.

The first condition was met—appellant entered upon a term of imprisonment on January 18, 1983, when sentence was pronounced in Maryland District Court.

The second condition was met when a detainer was lodged against appellant. "A detainer is a notification filed with the institution in which a prisoner is" incarcerated, "advising that" the prisoner "is ... pending criminal charges in another jurisdiction" and "asking the institution either to hold the prisoner ... or to notify the" jurisdiction "when release of the prisoner is imminent." *Carchman v. Nash, supra* at 3403; *Cuyler v. Adams,* 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 706 n. 3, 66 L.Ed.2d 641 (1981); *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978). "[A] detainer may be lodged against a prisoner" without judicial supervision "on the initiative of a" law enforcement officer or prosecuting official. "[A] detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial ... Further action must be taken by the receiving State in order to [actually] obtain the prisoner." *United States v. Mauro, supra* at 358, 98 S.Ct. at 1846. Once a detainer is filed against a prisoner, it remains lodged without any action being taken on it and its mere existence may present problems in sentencing, as well as in the rehabilitative process. *Id.* at 358–60, 98 S.Ct. at 1846–47. Thus, it appears that the "military detainer" filed by the Armed Forces Police on December 14, 1982, and the Commanding Officer's letter of notification of February

4, 1983, could both be considered detainers for purposes of the Agreement.

Whether the third prerequisite was met presents the troubling aspect of this case. It is undisputed that appellant did not technically comply with the procedures provided in Article III. In fact, he failed to meet the sole requirement placed on a prisoner under Article III in that he did not make a "written request for a final disposition" through "the warden, commissioner of corrections, or other official having custody of him." Art. III(b).

The requirement that the request be forwarded by the prisoner's custodian with supporting documentation serves an important purpose in alerting authorities of the receiving state that the prisoner is invoking the Agreement. Otherwise, each communication from a prisoner would require scrutiny to determine whether it could possibly be construed as invoking the Agreement. The receipt of the certificate documenting the prisoner's status and parole eligibility assists the receiving state in determining whether to prosecute. *See Beebe v. Vaughn,* 430 F.Supp. 1220, 1223 (D.Del. 1977). Consequently, the procedural requirements of filing a request further the underlying purpose of the Agreement by expediting resolution of charges.

■ Generally, a prisoner may not benefit from the statutory 180-day time limitation unless he first complies with the formal notice and request requirements of Article III. *Tinghitella v. State of California,* 718 F.2d 308 (9th Cir.1983); *McCallum v. State,* 407 So.2d 865 (Ala.Cr.App.1981); *Williams v. State of Maryland,* 445 F.Supp. 1216 (D. Md. 1978); *Gray v. Benson,* 443 F.Supp. 1284 (D.Kan.1978), *aff'd.* 608 F.2d 825 (10th Cir.1979). As the Agreement must be construed liberally "to effectuate its purposes," Art. IX, some exceptions have been recognized. For example, failure of strict compliance may be excused when a prisoner receives inaccu-

rate or misleading information or is unable to comply with the procedures provided in Article III through no fault of his own. *See Romans v. Dist. Ct. Eighth Judicial District,* 633 P.2d 477 (Colo.1981) (prison officials failed to inform prisoner of right to make request); *Burns v. State,* 578 S.W.2d 650 (Tenn.Cr.App.1978) (prison officials failed to forward request); *Schofs v. Warden,* 509 F.Supp. 78 (E.D. Ky. 1981)(prisoner denied necessary forms); *United States v. Hutchins,* 489 F.Supp. 710 (N.D.Ind.1980) (wrong official informed prisoner of rights under Agreement and accepted notice and request under Article III). Nothing in the record here, however, explains appellant's failure to comply with the notice and request procedures of Article III.

■ Appellant nevertheless contends that the initial speedy trial demand of November 1, 1982, coupled with defense counsel's letter of January 17, 1983, were sufficient to invoke Article III. We do not agree. The initial demand to military authorities did not carry forward as it was followed by appellant's unauthorized absence. Although the January letter stated, "One of the paramount interests of justice is a speedy disposition of the offenses" and requested that defense counsel be informed of actions the Government had "taken to reassert jurisdiction over" appellant, it was styled as a request for psychiatric evaluation and too obliquely worded to constitute a demand for trial.[1]

In spite of the defects, appellant contends that the actions of military authorities reflect a tacit acknowledgment that defense counsel's letters were a request for disposition of charges under the Agreement. This contention is unsupported by the record. It is abundantly clear that trial counsel did not view them as such. In his endorsement on defense counsel's letter of April 25, he stated, "It should also be noted that AN Greer, under the Interstate Agree-

---

1. Defense counsel's letter of April 25, 1983, was the first unequivocal demand for speedy trial after appellant's incarceration by Maryland authorities. Even if this were deemed sufficient to invoke Article III of the Agreement, appellant would not prevail, as trial was had within 180 days of that request.

ment on Detainers Act, had the right, which he has failed to exercise, to request his release from civilian confinement to settle the military charges pending against him."

Moreover, it is difficult for us to conceive how the action of the Commanding Officer in notifying Maryland authorities of the pending military charges could be construed as an acknowledgment of a request for speedy trial. This did nothing to accelerate appellant's court-martial. It was not until April 14, three months after appellant's alleged demand for disposition, that the Commanding Officer requested appellant's temporary release for trial. Apart from any right of appellant to request final disposition of the charges, the Navy had an independent right under the Agreement to request appellant's presence for trial.[2] Therefore, it does not appear that the ac-

tions of the Commanding Officer justified appellant's failure to make a proper request for disposition pursuant to the Agreement. *Cf. Nash v. Jeffes,* 739 F.2d 878 (3d Cir.1984), *rev'd. on other grounds sub nom. Carchman v. Nash, supra* 105 S.Ct. at 3405 n.2.

Appellant does not allege that he was misled in any way or that his custodians in Maryland failed to inform him of the existence of the detainer or his rights under the Agreement or somehow caused the failure to comply with the requirements of Article III. Under these circumstances, the 180-day period never began to run.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

---

**2.** Article IV establishes a procedure by which officials of a state in which untried charges are pending may request temporary custody of a prisoner against whom it has lodged a detainer and who is serving a term of imprisonment in another state. The prisoner must be tried within 120 days after his arrival in the requesting state. Art. IV(c). The time limitations of Article IV were not triggered in this case until appellant was released to the military on September 10, 1983. As appellant was brought to trial on September 26, Article IV(c) was not violated.