REED, Senior Judge:
The appellant was tried by a general court-martial with officer members, on various dates between 28 June 1993 and 22 February 1994. Pursuant to his pleas, he was found guilty of seven conspiracies to commit rob *538 bery with a firearm, an unauthorized absence, and eight robberies with a firearm, in violation of Articles 81, 86, and 122 of the Uniform Code of Military Justice [hereinafter “UCMJ” or “the Code”], 10 U.S.C. §§ 881, 886, 922 (1988). He was sentenced to confinement for 3 years, forfeiture of all pay and allowances, reduction to pay grade E-l, and a dishonorable discharge. The convening authority [CA] approved the sentence as adjudged; a pretrial agreement had no affect on the sentence. The CA, citing Article 57(e) of the Code, further ordered that the sentence of confinement not be executed until the appellant’s permanent release by the State of Washington, where the appellant was serving a term of civilian confinement for other offenses.
The appellant has now raised seven assignments of error with this Court.[1] We are called upon to decide whether the speedy trial provisions of (1) the Interstate Agreement on Detainers Act [hereinafter “IADA”], 18 U.S.C. app. § 2 (1988), (2) Article 10 of the Code, or (3) Rule for Courts-Martial [R.C.M.] 707, have been violated; whether the appellant received the effective assistance of counsel when counsel did not complain about the deferment of confinement under Article 57(e) of the Code; whether the appellant was denied credit for any pretrial or post-trial confinement he served; and whether the appellant’s guilty plea to an unauthorized absence while he was confined by civilian authorities was provident. Finding no error, we affirm. We will briefly discuss the facts before analyzing the assignments of error. A chronology is attached as an appendix to this opinion to aid in understanding our analysis. No chronology was-agreed upon at trial, and our appendix represents the facts as we find them.
FACTS
The appellant was arrested in October of 1991 by officers of the Mount Vernon Police Department for the robbery of a McDonald’s restaurant in Mount Vernon, Washington. He was held without bail in the Skagit County, Washington, jail pending the disposition of civilian charges. On 2 July 1992, the appellant was sentenced to 57 months in prison by the Superior Court of Washington for robbery in the first degree and for harming a police dog.[2]
On 9 November 1992, military charges were preferred against the appellant at Naval Air Station, Whidbey Island, Washington. The charges related to a series of armed robberies in British Columbia, Canada, and are substantially the same as the charges upon which the appellant was later tried by this general court-martial. All of these *539 charges predated the appeEant’s robbery of the McDonald’s restaurant in Mount Vernon, Washington.
On 10 November 1992, the day after charges were preferred against the appeUant by military authorities, a detainer was filed by the Commanding Officer, Naval Legal Service Office, Puget Sound, with the McNeU Island Corrections Center where the appellant was then incarcerated by the State of Washington. On 24 November 1992, the appellant acknowledged that he had been advised that this detainer had been filed by the U.S. Navy. The appeUant never requested expeditious handhng of the charges preferred against him by the xrdlitary pursuant to the IADA. However, the Government admitted during oral argument that the appeUant had never been advised by prison authorities of his right to request such expeditious handling.
On 9 November 1992, the same day charges were preferred against the appellant, the Government requested a delay in the proceedings from the convening authority until such time as the appellant was returned to military control. Appellate Ex. XIII at 2; see R.C.M. 707(c). The CA granted this request on 17 November 1992. Appellate Ex XIII.
An investigation pursuant to Article 32 of the Code, 10 U.S.C. § 832 [hereinafter “Article 32 Investigation” or “Investigation”] was scheduled to begin on 15 December 1992, but was postponed until January 5, 1993, at the request of the detailed defense counsel. Appellant’s Brief at 6; Appellate Ex. XIII at 3.
On 31 December 1992, the appellant hired civüian counsel to represent him. Article 32 Investigation transcript of 15 January 1993 at 23. On 4 January 1993, civüian counsel asked for a continuance of the Investigation until February. Id. Based on the defense counsel’s request, the Investigation was postponed until 14 January 1993, and then again until 15 January 1993. On that date, the Investigation convened at McNeU Island Corrections Center, but after the Government had presented its case, it was continued until 25 January 1993 at the appeUant’s request. Article 32 Investigating Officer’s Report of 2 Feb. 1993 at 2; Article 32 Investigation transcript at 74-81. Although the Investigation was completed on 25 January, the defense requested that it be reopened. Article 32 Investigating Officer’s Ex 33; Defense Counsel’s ltr of 22 Feb 1993. That request was granted and the reopening scheduled for 12 March 1993 when the defense requested another delay until 29 March. Article 32 Investigating Officer’s Ex. 34, 35. The Investigation was concluded on that date, and charges were referred to trial by a general court-martial on 22 April 1993.
The appeUant was returned to temporary military control by the State of Washington on 11 May 1993 pursuant to the IADA detainer filed by the Navy. On 28 June 1993, the appeUant was arraigned and granted a continuance, at his request, until 17 August 1993. On 4 August 1993, the appellant again requested and was granted a continuance until 27 September 1993. On 23 September 1993, the appeUant requested and received a final continuance until 12 October 1993. On 12 October 1993, the appeUant entered pleas of guüty to the offenses noted above. He was found guilty by the Court on 13 October 1993 and sentenced by members on 22 February 1994.
ANALYSIS
I.

The Interstate Agreement on Detainers Act

In his first assignment of error, the appellant avers he was denied his right to a speedy disposition of the charges pursuant to the IADA. If he is correct, the IADA would require that the military charges and specifications be dismissed. 18 U.S.C. app. § 2, art. IV(e). Dismissal may be with or without prejudice.
The IADA is a compact signed by the United States, 48 of the individual states, the District of Columbia, Puerto Rico, and the Virgin Islands. United States v. Greer, 21 M.J. 338 (C.M.A.), cert, denied, 479 U.S. 823 (1986). It applies to the müitary. Pub.L. No. 91-538, § 5, 84 Stat. 1397, § 5. The purpose of the IADA is to facUitate the orderly disposition of charges and detainers of persons already incarcerated in other juris *540 dictions. 18 U.S.C. app. § 2, art. I. Article III of the IADA sets forth a procedure in which a prisoner serving a sentence in one state (the sending state) may request the disposition of untried charges on which a detainer has been filed by another state (the receiving state). Article 111(a) provides in pertinent part:
Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint....
18 U.S.C. app. § 2, art. 111(a). When a written notice and request is made by the prisoner, the receiving state must bring the prisoner to trial within 180 days or face dismissal of the untried charges.
There are three requirements that must be met to invoke the 180-day limitation:
(1) the prisoner must have entered upon a term of imprisonment in the sending state;
(2) a detainer must have been filed against the prisoner by the receiving state; and,
(3) the prisoner must have provided notice of the place of his imprisonment and requested final disposition of the untried charges. Greer, 21 M.J. at 340.
In the case before us, (1) and (2) above appear to have been met; (3) clearly was not. As noted above, however, the appellant was never advised by the civilian prison officials of his right to request speedy disposition of the military charges.[3] The IADA requires that this information be conveyed to the prisoner when a detainer is filed. 18 U.S.C. app. § 2, art. III(c). The U.S. Court of Military Appeals (now the U.S. Court of Appeals for the Armed Forces) recognized in Greer that an accused could not be denied the remedial provisions of the IADA “when a prisoner receives inaccurate or misleading information or is unable to comply with the procedures provided in Article III through no fault of his own.” 21 M.J. at 341 (citing Schofs v. Warden, 509 F.Supp. 78 (E.D.Ky.1981); United States v. Hutchins, 489 F.Supp. 710 (N.D.Ind.1980); Romans v. Dist. Ct. Eighth Judicial District, 633 P.2d 477 (Colo. 1981); Burns v. State, 578 S.W.2d 650 (Tenn.Ct. App.1978)); see also United States v. Reed, 910 F.2d. 621 (9th Cir.1990); United States v. Tummolo, 822 F.Supp. 1561 (S.D.Fla.1993). In these cases, the confining jurisdiction either failed to inform the prisoner of his rights under the IADA or did not properly process the forms requesting speedy disposition of the charges. In each instance, the charging jurisdiction found that the plain language of the IADA required dismissal of the charges when the prisoner did not receive a speedy trial under the provisions of the Act. See 18 U.S.C. app. § 2, art. V(c). We must establish when the 180-day period was triggered to determine whether or not the Government violated the IADA
In his pleadings and during oral, argument, the appellate defense counsel opined that some sort of “detainer” or “hold” had been filed by the military prior to the one of 10 November 1992 and that the speedy trial provisions of the IADA were triggered by this earlier “detainer” or “hold”. Counsel bases this on the following portion of the appellant’s testimony at his court-martial.
Q. Airman Bramer, did anybody — did anybody show you a warrant or detainer or anything from the navy?
A No sir.
Q. Did anybody tell you about that there was one pending?
A Yes, sir. The counselor, the classification counselor, at Shelton, Washington.
*541 Q. Do you have any idea where he got that idea?
A. He just punched it up on the computer, sir.
Record at 27-28. Appellate defense counsel has argued to us that a detainer must have been filed earlier than 10 November 1992 because the appellant’s stay at Shelton, Washington, occurred prior to that date.
For the IADA to come into play, however, there must have been an “untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner----” 18 U.S.C. app. § 2, art. 111(a). As we have indicated, however, military charges were not preferred against the appellant until 9 November 1992. Thus, that date is the earliest date that the IADA could possibly have become applicable in this case. It may be that the computer entry the appellant refers to, if in fact there was one, concerned the appellant’s active duty status and the need to return him to his command once the state proceedings were completed. This is consistent with Navy policy stated in the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C of 3 Oct 1990 [JAGMAN]. The JAGMAN provides that “[a] member of the Navy or Marine Corps arrested by Federal or State authorities and released on bail or on his own recognizance has a duty to return to his parent organization.” JAG-MAN § 0611. Thus a member who is so released and fails to return to his organization may be declared a deserter and apprehended.[4]
Despite how one characterizes the “hold” purportedly placed on the appellant in this case, it clearly falls short of what Congress contemplated as the triggering event under the IADA (i.e., a notification filed with the prison authorities and based on pending charges) that would allow the appellant to request speedy disposition of those charges. Any other interpretation would lead to the absurd result of removing prosecutorial discretion from the receiving state and placing it in the hands of the sending state’s prison authorities. The fact that the State of Washington might have believed that the Navy intended to file charges is insufficient to trigger the provisions of the IADA United States v. Hall, 974 F.2d 1201, 1205 (9th Cir. 1992). A prisoner may not avail himself of the Act until: (1) the charging jurisdiction actually files a detainer with the confining jurisdiction, Baxter v. United States, 966 F.2d 387 (8th Cir.1992); United States v. Weaver, 882 F.2d 1128 (7th Cir.), cert, denied sub nom. Schmanke v. United States, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); (2) an accused is a sentenced prisoner in the sending state and been taken to a correctional facility, Crooker v. United States, 814 F.2d 75 (1st Cir.1987); and (3) there is an “indictment, information, or complaint” filed against the prisoner by the receiving state.
For purposes of interpreting the IADA and its speedy trial provisions in this case, we consider the filing of the detainer on 10 November 1992, based on charges preferred on 9 November 1992, as our starting point, since the Government used preferral of charges as justification for filing the detain-er.[5] In computing time periods for speedy *542 trial purposes, however, the Act provides that for “good cause shown the court having jurisdiction of the matter may grant any necessary or reasonable continuance,” and that the period shall also be tolled for periods of time when the prisoner is “unable to stand trial.” 18 U.S.C. app. § 2, arts. 111(a), VI(a); see also Burrus v. Turnbo, 743 F.2d 693, 702 (9th Cir.1984), cert, granted sub nom. Hijar v. Burrus, 474 U.S. 816, 106 S.Ct. 59, 88 L. Ed.2d 48, vacated, 474 U.S. 1016, 106 S.Ct. 562, 88 L.Ed.2d 548 (1985).
The appellant was arraigned on 28 June 1993; thereafter, the defense requested and was granted continuances until October 12, 1993, the date the trial commenced and the appellant entered his guilty pleas. Thus the period of time under our scrutiny is from 10 November 1992 until 28 June 1993; for our purposes we do not count 10 November but will count 28 June, totaling 230 days. See generally United States v. Manolo, 1 M. J. 452 (C.M.A.1976); United States v. Tebsherany, 30 M.J. 608 (N.M.C.M.R.1990), aff'd, 32 M.J. 351 (C.M.A.1991). Part of that time, as we have noted, however, is delay attributable to continuances requested by and granted to the defense.[6] As a result of those requests the proceedings were delayed four times prior to arraignment for 58 days. Subtracting the 58 days from the 230 days leaves 172. Thus, the appellant was brought to trial within the 180 days mandated by the IADA.[7]
II.

Speedy Trial and Pretrial Confinement Credit

In his second assignment of error, the appellant alleges he was denied his right to a speedy trial as mandated by the sixth amendment to the U.S. Constitution, Article 10 of the Code, and R.C.M. 707. He also alleges in his fifth assignment of error that he was denied pretrial confinement credit by the military judge for the time he was held by civilian authorities prior to his court-martial and for the time he was held by military authorities in temporary custody while he awaited his court-martial. Because speedy trial and pretrial confinement issues are intertwined, we will consider them together.
R.C.M. 707 provides in applicable part that an “accused shall be brought to trial within 120 days of the ... preferral of charges.”[8] Preferral of military charges oc *543 curred on 9 November 1992.[9] The day charges are preferred does not count for purposes of computing the 120-day period, but the date on which the accused is brought to trial does. Tebsherany, 30 M.J. at 610. An accused is “brought to trial” under this rule at the time of arraignment under R.C.M. 904. Requests for delay before referral will be submitted to the convening authority and requests after referral will be submitted to the military judge. R.C.M. 707(c)(1); see also United States v. Carlisle, 25 M.J. 426, 428 (C.M.A.1988). Any pretrial delay approved by the convening authority or by the military judge is excluded when determining whether the speedy clock has run. R.C.M. 707(c). The purpose of this rule is to provide guidance for granting pretrial delays and to eliminate after-the-fact determinations as to whether certain periods of delay are excludable. Manual for Courts-Martial, United States, 1984 [MCM], app. 21, Rule 707 analysis at A21-40. The rule conforms to the principle that the Government is accountable for all time prior to trial unless a competent authority grants a delay. United States v. Longhofer, 29 M.J. 22 (C.M.A.1989). Delays are subject to review for both abuse of discretion and the reasonableness of the period of delay granted. United States v. Maresca, 28 M.J. 328 (C.M.A.1989).
On the same day that the charges were preferred, the Government asked the CA to grant a period of delay in the prosecution of the charges until the appellant was returned to military control, and this request was granted on 17 November 1992. One of the reasons suggested in the discussion of R.C.M. 707 in the MCM for a CA to grant a delay is for “time to secure the availability of the accused.” MCM, Part II, R.C.M. 707(c)(1) discussion at 11-73. Subsequent to preferral, neither the appellant nor his counsel ever requested a speedy disposition of the charges nor did they ask the CA to reconsider his grant of the delay. The charges were referred to trial by general court-martial on 22 April 1993. As required by the JAG-MAN, a request for temporary custody of the appellant pursuant to the IADA was approved by the military judge on 28 April 1993. JAGMAN § 0614b(2); Appellate Ex. I. As we have already stated, the appellant was returned to temporary military control 14 days later on 11 May 1993 and was arraigned on 28 June 1993.
There is no indication that the Government was not diligent in obtaining custody of the appellant. We know that the civilian judge refused to release the appellant on bail prior to the state’s prosecution. The appellant thus was not available for trial by the military until after the resolution of his civilian charges — either by his conviction and the service of any sentence to confinement or his acquittal and release. See R.C.M. 804.
The recognized procedure for military authorities to obtain the person of the appellant, after he became an adjudged prisoner by the State of Washington and began serving his sentence to confinement there, was through the IADA As we have stated, the IADA is not operable until there has been a detainer lodged against an adjudged prisoner based on an untried indictment, information, or complaint.[10] In the military, we equate *544 referral of charges with an “indictment, information, or complaint.”[11] See United States v. Kroop, 38 M.J. 470, 474 (C.M.A 1993) (Gierke, J., dissenting) (quoting United States v. Sell, 3 C.M.A 202, 206, 11 C.M.R. 202, 206 (1953)). Although the Navy filed a “detainer” with the civilian authorities after the preferral of military charges, the appellant was not available to the Navy for prosecution under the LADA until his conviction by the state authorities and the referral of charges by the military.
In granting the delay in the case now before us, the CA indicated the delay continued until such time as the appellant was returned to military control. A request to the civilian authorities for the custody of the appellant was made on 27 April 1993, after the referral of charges on 22 April 1993. The appellant was delivered to the military on 11 May 1993 and arraigned on 28 June 1993.
The accused is brought to trial within the meaning of R.C.M. 707 at the time of arraignment. R.C.M. 707(b)(1). Thus, the appellant was not denied his right to a speedy trial under R.C.M. 707 since he was brought to trial within 44 days after his return to military control.[12] All delay before his return to military control was approved by the convening authority as excludable delay. We do not find this delay unreasonable or an abuse of discretion in the CA granting such a delay. Maresca, 28 M.J. at 333.
Nor was the appellant denied his right to a speedy trial under either Article 10 of the Code or the U.S. Constitution. “The Sixth Amendment to the Constitution of the United States guarantees the criminal accused the right ... to a speedy trial. In the military, that right is reiterated in Article 10, UCMJ, 10 U.S.C. § 810.” United States v. Rowsey, 14 M.J. 151,152 (C.M.A1982) (citing United States v. Hounshell, 7 C.M.A 3, 6, 21 C.M.R. 129, 132 (1956)). While Article 10 is usually considered more protective than the sixth amendment’s right to a speedy trial, United States v. Marshall, 22 C.M.A 431, 47 C.M.R. 409 (1973), “it is clear that some arrest or confinement is necessary to trigger Article 10’s protection ...,” United States v. Nelson, 5 M.J. 189, 190 (C.M.A.1978). Thus, an accused who has never been placed in confinement prior to trial by military authorities is unable to avail himself of Article 10’s protection.
The military is not accountable for confinement by civilian authorities on civilian charges.[13] United States v. Garner, 39 M.J. 721, 726 (N.M.C.M.R.1993); United States v. Bragg, 30 M.J. 1147 (A.F.C.M.R.1990), petition denied, 32 M.J. 313 (C.M.A.1991); United States v. Cummings, 21 M.J. 987 (N.M.C.M.R.1986). Even when the accused is initially confined by military authorities for *545 military offenses but released by the military to civilian authorities for civilian offenses, the military is not chargeable for civilian confinement under such circumstances.
While the military exercises some control to the extent it may elect to retain the accused, such control is in essence a judgment as to whether the military or civilian offenses should be tried first; when the judgment is exercised in favor of the civil offenses, the subsequent confinement is directly related to those offenses, not the military offenses.
United States v. Reed, 2 M.J. 64, 67 (C.M.A 1976). If an accused is confined for civilian offenses prior to being released to military control, that delay will not be chargeable to the Government. Id.; United States v. Williams, 12 C.M.A 81, 30 C.M.R. 81 (1961).
The appellant was not placed in pretrial confinement by the military; rather he was released into the temporary custody of the military, pursuant to a request under the IADA, pending his trial by court-martial.
The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments____ Except for his attendance at court and while being transported to or from any place at which his presence may be required, the prisoner shall be held in a suitable jail or other facility regularly used for persons awaiting prosecution.
18 U.S.C. app. § 2, art. V(d) (emphasis added). As a result of the IADA, the military had no alternative but to maintain the appellant in confinement; confinement was for the benefit of the sending state and to ensure the prisoner’s return to the sending state once the appellant’s court-martial was completed. Since the appellant was not placed in pretrial confinement by the military but was merely held in temporary custody under the IADA pending trial, he is due no pretrial confinement credit,[14] nor has there been any speedy trial violation under Article 10, UCMJ, or the U.S. Constitution. Assignment of error II and that part of assignment of error V concerning pretrial confinement, therefore, lack merit.
III.

Ineffective Assistance of Counsel and Post-Trial Confinement Credit

Assignments of error III, IV, VII, and the remaining part of V concern whether the appellant’s sentence by court-martial began running the day it was adjudged, or whether it was deferred by operation of law because of the service of the sentence to confinement arising from the civilian conviction. If it was deferred by operation of law then it runs consecutively with the prison term adjudged by the civilian court; if not, it runs concurrently with the civilian prison term and the appellant is entitled to credit for the time he served in the Washington State prison subsequent to his court-martial.[15]
The appellant argues that the court-martial sentence to confinement ran concurrently with his civilian sentence to prison and that his counsel were ineffective in their representation of him to his detriment by their failure to understand and implement this principle for his benefit. We find that the court-martial sentence runs consecutively with the civilian prison sentence; thus the appellant’s counsel were not ineffective even if they misunderstood this principle, because any error that resulted was harmless.
Despite the fact that the convening authority attempted to defer the sentence to confinement adjudged at the court-martial *546 pursuant to Article 57(e) of the Code,[16] both Government and the defense agree, as do we, that that article does not apply to this case. Subsection (e) of Article 57 was enacted on 23 October 1992 as part of the National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102-484, § 1064, 106 Stat. 2505. By its terms, the provisions therein take effect on the date of the enactment of the legislation and apply to offenses committed on or after that date. Article 57(e) thus does not apply to the offenses before this Court all of which were committed during 1991. But this does not end our analysis.
“The concurrent sentence, in the sense in which that device is utilized in the administration of criminal law in the civilian community, is entirely without precedent in military procedure.” United States v. Keith 1 C.M.A 442, 448, 4 C.M.R. 34, 40 (1952).
Where a person, while under sentence of imprisonment, is again brought to trial and sentenced to a further measure of the same punishment, it is usual in the civil practice for the sentence to specify that the second imprisonment is to begin at the expiration of the first, indicating the date of such expiration. At military law, however, it is not habitual, nor is it necessary, so to specify, or otherwise to direct in terms that the second punishment, (of imprisonment, forfeiture, or suspension,) is to be executed as additional to or continuous upon the first. It is sufficient and almost invariable to frame such punishment in the usual form, as an independent sentence; the mere fact that a similar sentence is pending and being executed at the time determining of itself that the second sentence is to be treated not as concurrent but as a distinct additional penalty of which the execution is to commence upon the completion of the first, i.e. when the same is terminated by its due expiration, or by a remission on the part of the proper superi- or authority. The second sentence is thus made cumulative simply by operation of law.
William Winthrop, Military Law and Precedents 404 (reprint 1920) (2d ed. 1895) (footnotes omitted, emphasis added). It is true that the Uniform Code of Military Justice provides that:
Any period of confinement included in a sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended or deferred shall be excluded in computing the service of the terms of confinement.
UCMJ art. 57(b), 10 U.S.C. § 857(b). However,
cumulative or consecutive sentences have long been a part of military law____ [Tjhere is no indication Congress intended to engraft concurrent sentences into military justice when it enacted the Code. Rather Article 57(b) seems to have been designed to insure that an accused received credit against a sentence to confinement served from the date the court-martial adjudged sentence instead of some later date when punishment was approved by reviewing authority.
United States v. Bryant, 12 C.M.A 133, 138, 30 C.M.R. 133, 138 (1961).
The President, in implementing Article 57, has stated that “[a]ny period of confinement included in the sentence of a court-martial begins to run from the date the sentence is adjudged by the court-martial____” R.C.M. 1113(d)(2). Certain periods, however, are excluded in computing the service of the confinement:
*547 “[pjeriods during which the sentence to confinement is suspended or deferred,” R.C.M. 1113(d)(2) (A)(i);
“[pjeriods during which the accused is in custody of civilian authorities” awaiting trial by such authorities for civilian offenses, R.C.M. 1113(d)(2)(A)(ii);
“[pjeriods during which the accused has escaped or is absent without authority,” R.C.M. 1113(d)(2)(A)(iii);
“[pjeriods during which another sentence by court-martial to confinement is being served,” R.C.M. 1113(d)(2)(A)(iv).
Thus, even the Manual recognizes that there are exceptions in addition to those specifically laid out in the Code.
In United States v. Ellenson, 19 M.J. 605 (A.F.C.M.R.1984), a factual situation similar to the one before this Court, the Air Force Court of Military Review held that a sentence of confinement adjudged by a courts martial could be served consecutively with periods previously imposed by a civilian court and noted that this “is in keeping with the United States Court of Military Appeals’ position that multiple sentences to confinement are to be served consecutively, not concurrently.” 19 M.J. at 607 (citing Bryant). A contrary result is not required by the IADA
“Any request for final disposition made by a prisoner ... shall also be deemed to be ... a waiver of extradition to the receiving State to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending State.” 18 U.S.C. app. § 2, art 111(e) (emphasis added). It may be true, as the appellant argues to us, that normally civilian sentences are served concurrently with one another; however, the rule in the military is quite different. Here, sentences run consecutively. Bryant, 12 C.M.A at 137, 30 C.M.R. at 137. Thus, the appellant’s sentence to confinement did not commence running until his return in February 1995 to military authorities upon completion of the sentence adjudged by the civilian courts. Reference to Article 57(e) by the SJA in his recommendation amounted to harmless error. Nor were the appellant’s counsel at trial ineffective for they acted in conformity with the principle that in the military sentences to confinement run consecutively. Consequently, assignments of error III, IV, VII and the remaining aspect of V lack merit.
IV.

Providence of Plea

As for the appellant’s sixth assignment of error, we find the appellant’s pleas to Charge V and the specification thereunder for unauthorized absence to be provident. United States v. Asbury, 28 M.J. 595, 598-99 (N.M.C.M.R.), petition denied, 28 M.J. 356 (C.M.A.1989).
Accordingly, the findings and sentence, as approved on review below, are affirmed.
Senior Judge ORR and Judge McLaughlin concur.
APPENDIX
1991 Appellant commits various offenses in Canada & State of Washington
21 Oct 91 Arrested by State of Washington for Washington State Offenses
2 Jul 92 Appellant pleads guilty and is sentenced by Superior Ct. of Washington to 57 months in prison for Washington State offenses
9 Nov 92 Military charges preferred against the appellant for offenses committed in Canada
9 Nov 92 Military prosecutor asks CA to delay military proceedings until the appellant is returned to military control
10 Nov 92 Detainer filed by military with State of Washington
17 Nov 92 CA approves prosecutor’s request for delay until the appellant is returned to military control
24 Nov 92 The appellant acknowledges he has been informed by Washington State prison of *548 ficials of the military’s detainer
15 Dec 92 Article 32 Investigation scheduled; postponed until 5 Jan 93 at request of detailed defense counsel
31 Dec 92 The appellant hires civilian counsel to represent him
4 Jan 93 Civilian counsel requests delay in Art 32 until Feb; Art 32 postponed only until 15 Jan 93
15 Jan 93 Art 32 begins at McNeil Island Corrections Center, Washington; after completion of Gov case, civilian counsel requests continuance until 25 Jan 93
25 Jan 93 Art 32 completed
22 Feb 93 Defense asks that Art 32 be reopened
12 Mar 93 Art 32 scheduled to be reopened; defense requests delay until 29 Mar 93
29 Mar 93 Art 32 reopened and completed
22 Apr 93 Charges against the appellant referred to trial by general court-martial
27 Apr 93 Military asks for temporary custody of the appellant under IADA
28 Apr 93 Military Judge approves and forwards request for custody to State of Washington
11 May 93 Appellant returned by State of Washington to temporary military control
28 Jun 93 Appellant arraigned before a general court-martial and asks for continuance until 17 August 93
4 Aug 93 Appellant asks for further continuance until 27 Sep 93
23 Sep 93 Appellant asks for final continuance until 12 Oct 93
12 Oct 93 Appellant enters guilty pleas at general court-martial
22 Feb 94 Appellant sentenced by general court-martial
1 Mar 94 Appellant returned to State of Washington to complete prison term
Feb 95 Appellant returned to military; civilian confinement completed

. I. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY DISPOSITION OF THE CHARGES PURSUANT TO THE INTERSTATE AGREEMENT ON DETAINERS ACT, 18 U.S.C. app. § 2.
II. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL PURSUANT TO AMENDMENT 6 OF THE UNITED STATES CONSTITUTION, 10 U.S.C. § 810, AND RULE FOR COURTS-MARTIAL 707.
III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND IN POST-TRIAL PROCESSING WHEN HIS VARIOUS DEFENSE COUNSEL FAILED TO ASCERTAIN THAT THE POSTPONEMENT OF CONFINEMENT PROVISION OF 10 U.S.C. § 857(e) WAS INAPPLICABLE TO THE CHARGES BEFORE THE COURT.
IV. APPELLANT WAS DENIED A FAIR TRIAL WHEN ALL PARTIES TO THE' TRIAL ASSUMED THERE WAS "NO HARM” FROM THE EXTENDED DELAYS IN MOVING TO TRIAL, AND WHERE THE TRIAL AND THE SENTENCING HEARING WERE DELAYED FOR MANY MONTHS IN THE MISCONCEPTION THAT THE POSTPONEMENT OF CONFINEMENT PROVISION OF 10 U.S.C. § 857(e) WAS INAPPLICABLE TO THE RUNNING OF THE SENTENCE TO CONFINEMENT.
V. APPELLANT WAS IMPROPERLY DENIED CREDIT FOR TIME SERVED IN PRETRIAL CONFINEMENT AND FOR TIME SERVED POST TRIAL WHILE AWAITING SENTENCING.
VI. THE PLEA OF GUILTY TO CHARGE V AND ITS SPECIFICATION WAS IMPROVIDENT.
VII. APPELLANT WAS DENIED THE BENEFIT OF A PROPER STAFF JUDGE ADVOCATE RECOMMENDATION AND CONVENING AUTHORITY ACTION WHEN THE RECOMMENDATION WAS SILENT ON THE QUESTION OF POSTPONEMENT OF CONFINEMENT PROVISION OF 10 U.S.C. § 857(e), AND THE CONVENING AUTHORITY THEREAFTER PURPORTED TO EFFECT SAID POSTPONEMENT IN HIS ACTION.

. In February of 1995, the appellant concluded the service of this sentence and was transferred back to military authorities.

. The appellant had a detailed military counsel assigned to him; he also retained two civilian counsel to represent him. Prior to trial, none of these counsel requested the speedy disposition of the charges against appellant based on the IADA or R.C.M. 707.

. Additionally, die names of servicemembers who are administratively declared deserters from the armed forces are maintained in the Wanted Person File of the National Crime Information Center [NCIC] which is maintained by the FBI. See Secretary of the Navy Instruction 1620.7 of 9 May 80, Subject: Desertion and unauthorized absence.

. In this regard we are being generous with the appellant for, as we have noted, the 180-day period under the Act does not commence running until delivery by the prisoner "to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and a request for a final disposition to be made of the indictment, information, or complaint.” 18 U.S.C. app. § 2, art. 111(a). The detainer was filed on 10 November 1992; the appellant acknowledged that he had been informed of the filing of the detainer on 24 November 1992. It would have taken several days for the appellant to prepare the necessary paperwork and for it to be delivered to the appropriate authorities. Early December could just have easily been our start date in deciding whether the appellant’s speedy trial rights under the Act had been denied.
Additionally, as we will explain in footnotes 10 and 11, infra, the IADA does not become operable to allow the receiving state to gain custody of the prisoner until the receiving state has "indict *542 ed” the prisoner. Indictment in the military occurs as a result of the referral of charges. Charges against the appellant were not referred to trial by court-martial until 22 April 1993. It was after referral that the Government asked for and subsequently received temporary custody of the appellant. Since referral did not occur until 22 April 1993, an IADA detainer should not have been filed by military authorities until on or after that date. A "hold” informing civilian authorities of the military status of the servicemember and a request that he be returned to military control when the civilian authorities completed their proceedings could, of course, be placed at any time. Such a "hold” would not constitute time chargeable to the military for speedy trial purposes. United States v. Asbury, 28 M.J. 595 (N.M.C.M.R. 1989), pet. denied, 28 M.J. 356 (C.M.A.1989). Nor, as we have already stated, does such a request trigger the provisions of the IADA.

. 15 December 1992 to 5 January 1993 (21 days); 5 January 1993 to 15 January 1993 (10 days); 15 January 1993 to 25 January 1993 (10 days); 12 March 1993 to 29 March 1993 (17 days). Additionally, from the time the Government requested custody of the appellant from the civilian authorities (27 April 1993), until the Government received custody (11 May 1993), another 14 days elapsed. See Naval Station Puget Sound Brig Conduct Record, filed with this Court on 8 Mar 95. This period, arguably, should also be excluded from the 180-day period for speedy trial purposes under the IADA. See 18 U.S.C. app. § 2, art. VI(a).

. Since we find the IADA’s requirement that a prisoner be brought to trial in the receiving state within 180 days of the prisoner’s request has been met, we need not decide what the appropriate remedy is for failure to meet the 180 days when the prisoner is not informed by prison officials of his right to request an expedited hearing on the charges pending before the receiving state and thus makes no request.

. The triggering event of imposing restraint under R.C.M. 304(a)(2)-(4) does not apply here because the appellant was never placed into pretrial confinement by the military. Rather, military authorities accepted temporary custody of the appellant for purposes of trial by court-martial.

. The appellant has alleged that the period of accountability for speedy trial purposes began running earlier than preferral of charges because of a "hold" that allegedly had been placed on the appellant by the Navy to acquire possession of him once die civilian authorities released him from confinement. We have briefly discussed this "hold" in footnote 3, supra. It is clear to us that the civilian judge denied the appellant bail because of the civilian charges which were pending and not for the charges that were eventually preferred by the military arising from offenses the appellant committed in Canada. There is no need for us to speculate on the reason for such denial, since the denial was solely within the purview of the civilian judge.
The appellant argues that the civilian judge denied him bail because of the perception that, if released, the appellant would simply be picked up by the Navy. If true, this would tend to support the view that the appellant was denied bail and held in pretrial confinement solely for purposes of the civilian, and not any military, charges. It is difficult to see how the civilian court's attempt to prevent the Navy from gaining custody of the appellant was done for the Navy’s benefit. Thus we find no validity in the appellant’s claim that the Government's accountability should begin to run before the actual preferral of military charges.

. Detainer is not defined in the IADA. The legislative history to the enactment of the IADA indicates that a detainer is a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face *544 pending criminal charges in another jurisdiction.” United States v. Bamman, 737 F.2d 413, 415 (4th Cir.1984), cert, denied, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985) (quoting H.R.Rep. No. 91-1018, S.Rep. No. 91-1356, 91st Cong., 2d Sess. 3, reprinted in 1970 U.S.C.C.A.N. 4864, 4865) (emphasis added). In the military, charges are not pending until they are referred. See footnote 11, infra.

. Indictment is a technical word peculiar to Anglo-Saxon jurisprudence and implies the finding of a grand jury. Grin v. Shine, 187 U.S. 181, 23 S.Ct. 98, 47 L.Ed. 130 (1902). An information is a written accusation of crime preferred by a public prosecuting officer without the intervention of a grand jury. Nebraska v. Lockwood, 70 U.S. (3 Wall.) 236, 18 L.Ed. 47 (1865). A complaint is a "charge, preferred before a magistrate having jurisdiction, that a person has committed an offense, with an offer to prove the fact, to the end that a prosecution may be instituted.” Black’s Law Dictionary 357 (4th ed. 1957).
“Although military criminal law lacks an exact procedural analog to the civilian indictment or information, the referral of charges to a court-martial by a convening authority is probably their functional equivalent. Once referred to a court-martial, jurisdiction over the case clearly rests in the military judge, and a case is in existence." 1 Francis A. Gilligan & Fredric I. Lederer, Court-Martial Procedure, § 10-10.00 (1991).

. Even if we consider the date of referral as our starting point, there is still no violation of R.C.M. 707.

. When an accused is confined by civilian authorities on behalf of the military for military offenses, however, such time is chargeable to the Government. United States v. Keaton, 18 C.M.A. 500, 40 C.M.R. 212 (1969). Such is clearly not the case here.

. The appellant is not prejudiced by such a procedure. The IADA provides that "[djuring the continuance of temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence shall continue to run____” 18 U.S.C. app. § 2, art. V(f).

. If the sentences ran concurrently, the appellant would also be due credit for the time he spent incarcerated in the military confinement facility after his trial by court-martial but prior to his return to civilian authorities to complete his civilian prison term. Because we determine the sentences run consecutively, he receives no credit for this period either.

. Article 57(e) of the Code provides that
(1) In any case in which a court-martial sentences a person referred to in paragraph (2) to confinement, the convening authority may postpone the service of the sentence to confinement, without the consent of that person, until after the person has been permanently released to the armed forces by a state or foreign country referred to in that paragraph.
(2) Paragraph (1) applies to a person subject to this chapter who—
(A) While in the custody of a state or foreign country is temporarily returned by that state or foreign country to the armed forces for trial by court-martial; and
(B) After the court-martial, is returned to that state or foreign country under the authority of a mutual agreement or treaty, as the case may be. 10 U.S.C. § 857(e) (Supp.IV 1992).